Archibald C. Wemple, J.
The defendant herein was for many years Commissioner of Public Welfare of the County of Schenectady and continued to hold such office until September 22, 1958, on which date he resigned. The following day he was called before the Grand Jury of the County of Schenectady, was sworn and testified as to certain matters. The defendant refused to sign a waiver of immunity and on certain other matters he refused to testify on constitutional grounds.
While this case was before Hon. Willard Best, Justice of the Supreme Court, permission was granted the defendant or his attorney to examine the Grand Jury minutes and exhibits. Defendant also moved in Supreme Court to dismiss the indictment, which motion was denied without prejudice to renew in Schenectady County Court. The motion was then brought on for argument on November 4, 1959. The defendant’s counsel filed with the court a memorandum of law urging the dismissal of the indictment. The District Attorney filed an affidavit in which he stated, in substance, that the defendant, while before the Grand Jury, amply protected his position and was not indicted in connection with any matter on which he testified, and that what testimony he gave in no way furnished any link in the chain of evidence resulting in the indictment.
While the Grand Jury minutes to which reference has been made entitle the investigation as “ People of the State of New York against John Doe ” there is little doubt from a reading of the record that the investigation was directed specifically against the defendant above named, Leo H. Vosburg. The purport of all the questions, exhibits and testimony related to the operation of the office of the Commissioner of Public Welfare of the County of Schenectady and of the actions of this defendant while holding such public office. Many questions were directed to the defendant’s handling of accounts of inmates of the county home, a facility under the jurisdiction of the Commissioner. While other employees of the Department of Public Welfare were questioned during the investigation, the main attention and emphasis were directed to the actions of the defendant.
On page 1 of the Grand Jury minutes the District Attorney advised the defendant that “ the Grand Jury is in the process *374 of conducting an investigation to determine whether or not there has been committed in this county crimes of conspiracy, larceny and other crimes in connection with office holders and public employees. At the moment you are being called as a witness * * * [p. 2] it is quite conceivable in the course of this investigation that you may turn out to be a defendant, although at this moment we are calling you as a witness.” (Italics in the above quotation made by this court.)
District Attorney Cohn advised the defendant of his privilege to refuse to answer any question which might tend to incriminate him and advised him to assert his constitutional privilege against incrimination.
The question, therefore, resolved itself into one of whether or not the defendant was compelled to be a witness against himself in violation of his constitutional rights.
A careful study of the testimony taken before the Grand Jury shows that the defendant did testify generally as to the records and accounts of one Pietro Della Penta, Sylvester Mastdera, the estate of Joseph R. Wilson, Peter J. Quinlan and the estates of Walter Swan and Anna Swan. He also gave general testimony as to other inmates’ financial affairs out of which no indictments arose. In the course of the questioning the defendant was asked by the District Attorney specific questions concerning the Quinlan account, the Swan accounts and received responsive informatory answers to those queries. It should be noted that the defendant, at the request of the District Attorney, brought into the Grand Jury certain bankbooks relating to the Della Penta, Mastdera and Quinlan accounts about which this investigation was concerned. It is apparent, therefore, that the defendant did, in fact, become a witness against himself. To say that he was a witness only and did not give any helpful information or connecting links to his indictment is to beg the question. While the defendant did refuse to answer some questions, the very form of the question put to the defendant in asking him whether he had committed an improper act, followed by his refusal to answer, may have prejudiced the defendant in the eyes of the Grand Jury, and so have contributed to the finding of the indictment. Certainly he was sworn and certainly he did testify, both generally and specifically, as to the matters under investigation and affecting him.
The New York State Constitution (art. I, § 6) provides that no person “ shall * * * be compelled in any criminal case to be a witness against himself,” and then adds that “ any public officer who, upon being called before a grand jury to testify concerning the conduct of his office * * * refuse's to sign *375 a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question * * * shall by virtue of such refusal, be disqualified from holding any other public office * * * and shall be removed ”. The familiar Fifth Amendment of the United States Constitution contains a provision that no person “ shall be compelled in any criminal case to be a witness against himself,” etc. These are constitutional rights available to all citizens in the preservation of otir cherished constitutional safeguards. The defendant herein, not being a public officer at the time of his being' called to testify and not having signed a waiver of immunity, stood before the Grand Jury as a defendant, or, to put it another way, he and his acts as a public officer were obviously Under investigation and scrutiny by the Grand Jury. The defendant Was questioned under oath and gave answers under oath. Who can say what effect those answers had in the finding of the indictment. The fact remains that following his testimony an indictment against him was found by the Grand Jury which beard him testify.
Parenthetically it should be noted here that the Grand Jury was not charg'ed with the responsibility of determining' the guilt or innocence of this defendant. The only function of the Grand Jury is to investigate, to hear the witnesses for the People and to determine whether to make a formal charge which is the indictment. Later and on the trial of the indictment in the trial court the defendant has the opportunity of challenging the evidence against him and making his defense.
The Court of Appeals has held that an indictment must be dismissed where an investigation is proceeding against a defendant and he is required to testify against himself. The language of Judge Fuld in People v. Steuding (6 N Y 2d 214, 216-217) is clear: “By virtue of the Constitution of this State (art. I, §6) * * * a prospective defendant or one who is a target
of an investigation may not be called and eccammed before a Grand Jwry and, if he is, his constitutionally Conferred privilege against seif incrimination is deemed violated even though he does not claim or assert the privilege. (See, e.g., People v. De Feo, 308 N. Y. 595, 603; People v. Ferola, 215 N. Y. 285, 289-290; People v. Gillette, 126 App. Div. 665, 667 et seq.; People v. Bermel, 71 Misc. 356, 359 et seq.) [The protection from indictment and from use of any incriminating testimony given by the defendant results automatically from the violation of the constitutional privilege.] And the right and protection thus accorded by the Constitution may not be taken away or cut down by statute. * * * The statute [Penal Law, § 2447] does not apply in terms to a defendant or to one loho is in the shoes of *376 a defendant, insofar as it provides that the burden is cast upon him of claiming privilege, and any attempt to invoke it against such a person would offend against the constitutional provision to which we have referred above. In other words, since the right granted by the Constitution is automatically conferred, section 2447 is ineffectual to destroy or curtail it and any attempt to do so must be stricken as unconstitutional. A violation of the constitutional privilege carries with it a dismissal of the indictment returned by the Grand Jury before which the defendant testified.” (Italics in the above quotation made by this reviewing court.)
In the argument of this motion the District Attorney filed an affidavit in which he stated that the defendant ‘1 gave no information of any value to the prosecution.” As noted, the minutes of the Grand Jury reveal definite links between the testimony and the indictment. No brief has been filed herein by the District Attorney.
Since under the authority of the Court of Appeals ruling in the Steuding case (supra), cited herein, the indictment must fall, it is unnecessary to consider the second and third points in the argument and brief of defendant’s counsel. The indictment is dismissed.
Enter order accordingly.