OPINION OF THE COURT
Seymour Rotker, J.
The defendant, pro se, has moved to vacate judgment pursuant to CPL 440.10 (subd 1, par [h]), alleging that the conviction was obtained in violation of his rights under the Constitutions of the State of New York and of the United States. In support of the motion, he urges that a retroactive application of the recent case of People v Hughes (59 NY2d 523) be given. That case dealt with the admissibility of testimony of witnesses who had been subjected to hypnosis and announced a procedure whereby a pretrial hearing would be held to determine whether the hypnosis was so impermissibly suggestive so as to require exclusion of in-court testimony. A key prosecution witness in the instant matter was subjected to hypnosis and it is alleged that his testimony was tainted by hypnosis so as to render the in-court identification illegal. Because of this infirmity the defendant contends that vacating the judgment of conviction is the proper remedy.
The District Attorney has argued that defendant’s arguments with respect to the hypnosis issue were raised and rejected at the appellate level, thereby precluding review *143 by this court. Moreover, the District Attorney has alleged that the Hughes decision (supra) is to be given prospective application only and should not be applied retroactively.
A reading of the court papers and trial record reveals the following facts: Defendant was indicted on March 18,1977, and charged, inter alia, with acting in concert with two others to commit the crimes of murder in the second degree (two counts) and robbery. Thereafter, defendant’s case was severed from those of his codefendants. A Wade hearing was conducted by the court on the issue of pretrial identification. During the course of the hearing, it was made known that the only eyewitness to the incident had been subjected to hypnosis. However, the suggestiveness of the hypnosis session was not placed in issue and, instead, the hearing focused upon the integrity of the photo displays shown to the witness by law enforcement personnel. The motion to suppress identification testimony was denied in all respects, the court concluding that there was no taint in the identification procedures utilized. The hypnosis issue was not addressed in the court’s conclusion that there was no taint in the identification procedure.
At trial, defendant was identified as the shooter of the deceased by the witness who had been subjected to hypnosis. The fact that this witness had been subjected to hypnosis was made known to the jury and, in fact, the recording of the hypnosis session was introduced into evidence. The tape, however, was largely inaudible. A detective present at the session testified that the hypnotist stated to the witness that he was going to “plant a very powerful suggestion in his mind”. However, the detective further testified that after the session they did not ask the witness for a further description of the gunman.*
In addition to the testimony of the witness, the jury heard the testimony of one Thomas Morton, a friend of defendant for approximately six or seven years prior to the incident, who was in the car used for the commission of the robbery on the night of the incident but was not charged with the crime. While not a witness to the incident itself, he stated that he saw the defendant and a codefendant *144 return to the car with shotguns and the proceeds of a robbery. Charles Simmons was another acquaintance of defendant who testified that defendant admitted to him that he had shot a man in Queens during a robbery in the company of codefendants and Thomas Morton. He further stated that he testified against the defendant to benefit himself on a Nassau County cáse and because he wanted to get even with defendant. Testimony was also elicited from the medical examiner, a ballistics expert, and several police officers. Viewed in context then, the eyewitness’ testimony was critical to the case since he was the only eyewitness to the crime. His testimony also served as corroboration for defendant’s alleged admission and the testimony of Thomas Morton, who may also be viewed as an accomplice in law.
Defendant was convicted of the charges of felony murder and robbery on September 29,1978. He was sentenced to a term of 8Vs to 25 years’ imprisonment on the robbery charge and 25 years to life on the murder charge, both sentences to run concurrently.
The suggestibility of the hypnosis session was raised, inter alia, at the appellate level, but defendant’s conviction was affirmed, no opinion (People v Barnes, 85 AD2d 737). Leave to appeal to the Court of Appeals was also denied (People v Barnes, 56 NY2d 1034). Defendant’s motion for reargument of the appeal of the Supreme Court judgment based upon the hypnosis issue, was denied by the Appellate Division, Second Department, on December 6, 1982.
CPL 440.10 (subd 1) provides for different grounds upon which a judgment of conviction may be vacated. Subdivision 2 of that section provides:
“Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:
“(a) The ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue”.
Defendant’s arguments with respect to the hypnosis issue were presented before the Appellate Division and rejected. Therefore, his motion must be denied unless the *145 procedural rules announced in Hughes (supra) with respect to testimony affected by hypnosis are to be given retroactive effect. The Hughes court did not speak to the issue of retroactivity, and thus, this court must address the topic.
At the outset, a brief synopsis of the decision in People v Hughes (59 NY2d 523, supra) is necessary. In that case, a rape victim had identified an individual previously known to her as her assailant. However, her memory of the events was not clear and she was extremely unsure in her identification. In order to jog her memory, the victim was subjected to several hypnosis sessions and identification of the defendant was made at one of these sessions. After indictment, a brief hearing was conducted regarding the effect of the hypnosis sessions, and they were found by the court to be not impermissibly suggestive under the circumstances. At trial, the victim testified to events recalled both before and after the hypnosis sessions. Defendant was found guilty of rape, burglary and assault. The Appellate Division, Fourth Department, reversed and ordered a new trial and adopted a rule excluding any hypnotically induced testimony, although not holding the witness incompetent to testify to facts which she could recall prior to hypnosis. The Court of Appeals affirmed the Appellate Division ruling, holding that hypnosis had not been accepted with scientific certitude as a reliable method of restoring memory and thus, such testimony induced by hypnosis was to be excluded.
However, a witness would not necessarily be precluded from testifying as to events, recalled prior to hypnosis, providing that the witness had an independent memory of the events untainted by hypnosis. The court held that: “With respect to the hypnosis itself, detailed proof should be introduced as to the precise procedures that were followed in the particular instance, including measures taken to reduce the risk of impermissible suggestiveness. At this point the standards or guidelines proposed by the experts for the conduct of hypnotic sessions in connection with criminal investigations may be pertinent. Here, too, experience will be the best teacher, and it would be inappropriate in this case to undertake the formulation of rigid guidelines.” (People v Hughes, supra, p 547.)
*146 Although the parameters of a hearing of this nature are difficult to define, the court prescribed certain standards to aid in resolving this difficult issue.
Defendant’s conviction was final and he had exhausted his appellate remedies at the time of the Court of Appeals decision in Hughes (supra) which was in July of 1983. Thus, only a ruling of full retroactivity would provide him the relief he seeks.
At common law, a change in law would be given effect only while the case was on direct appellate review (Linkletter v Walker, 381 US 618). That rule gave way to an ad hoc determination as to whether full retroactive effect should be given certain principles while prospective application only should be given to others (People v Pepper, 53 NY2d 213, 220). In Stovall v Denno (388 US 293, 297), the court listed three factors to aid such a determination: (a) the purpose to be served by the new standards; (b) the extent of reliance by law enforcement authorities on the old standards; (c) the effect on the administration of justice of a retroactive application of the new standards.
Foremost among the three standards is “the purpose to be served by the new * * * rule.” (Desist v United States, 394 US 244, 249.) In United States v Peltier (422 US 531), this standard was further refined to provide retroactive application to a constitutional doctrine when its purpose was “‘to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises questions about the accuracy of guilty verdicts in past trials’” (p 535). In that case, any extension of the exclusionary rule was held to be collateral to the truth-finding function and thus, should be given prospective application only. At the other extreme, full retroactive effect was given to constitutional principles directly affecting the truth-finding function (see Brown v Louisiana, 447 US 323).
In United States v Johnson (457 US 537), a new standard governing retroactivity was struck, granting retroactivity to all decisions not yet final at the time the new decision was rendered. The court in Johnson also set out new standards governing the principles of full retroactivity, but explicitly limited their application to decisions of the *147 United States Supreme Court applying the Fourth Amendment. Cases clearly controlled by existing retroactivity precedents were also left untouched. The holding in Hughes (supra) is a State court ruling which essentially involves the due process considerations of affording defendants a fair trial. It is not a decision based upon the Fourth Amendment and, thus, the existing principles governing retroactivity control.
The effect of hypnosis upon a key prosecution witness and his/her ability to identify the assailant goes to the heart of the guilt/innocence issue, since the taint of an overly suggestive hypnosis session might well leave an inaccurate suggestion upon the witness’ mind which cannot be separated from an independent recollection of events. However, this court does not perceive that its function at the nisi prius level is to make far-reaching rules which may have an impact upon similarly situated defendants and affect the administration of justice. Rather, any extension of existing law with such broad implications should properly be done by an appellate court. Accordingly, this court declines to apply the decision in Hughes (supra) retroactively.
For the foregoing reasons, defendant’s application is denied.

 It is to be noted that a positive identification of defendant from a photo array was made subsequent to the hypnosis session.