OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Penal Law § 220.18 (5) makes it a felony to "knowingly and unlawfully possess * * * six hundred twenty-five milligrams of a hallucinogen.” The question of statutory interpretation before us is whether "knowingly” applies to the weight of the controlled substance. We conclude that it does and that the trial evidence was insufficient to satisfy that mental culpability element.
 

 A subsidiary issue concerns the denial of defendant’s request to represent himself at trial. We agree with defendant that the trial court’s basis for denying the application was improper, and that the issue was not waived in a subsequent letter to the trial court or in his jurisdictional statement to this Court.
 

 I.
 

 Viewed in a light most favorable to the People
 
 (People v Contes,
 
 60 NY2d 620, 621), the trial evidence revealed that on October 2, 1990 defendant asked his friend David Hopkins to order and receive a shipment of hallucinogenic mushrooms on his behalf. Hopkins agreed, and adhering to defendant’s instructions placed a call to their mutual friend Scott in San Francisco and requested the "usual shipment.” Tipped off to the transaction, on October 5 State Police Investigator Douglas Vredenburgh located the package at a Federal Express warehouse in Binghamton. The package was opened (pursuant to a search warrant) and resealed after its contents were verified. The investigator then borrowed a Federal Express
 
 *500
 
 uniform and van and delivered the package to Hopkins, the addressee, who was arrested upon signing for it.
 

 Hopkins explained that the package was for defendant and agreed to participate in a supervised delivery to him. In a telephone call recorded by the police, Hopkins notified defendant that he got the package, reporting a "shit load of mushrooms in there.” Defendant responded, "I know, don’t say nothing.” At another point Hopkins referred to the shipment containing two pounds. The men agreed to meet later that evening at the firehouse in West Oneonta.
 

 At the meeting, after a brief conversation, Hopkins handed defendant a substitute package stuffed with newspaper. Moments after taking possession, defendant was arrested. He was later indicted for attempted criminal possession of a controlled substance in the second degree.
 

 In pretrial letters to the Trial Judge, defendant expressed dissatisfaction with his assigned attorney and requested permission to represent himself. The Judge held a hearing, questioning defendant on his knowledge of the law and trial procedure. Defendant, who had three years of college and had previously stood trial for another offense, provided answers that were reasonably accurate for a layperson.
 
 [1]
 
 Nevertheless, the court denied the request, concluding that defendant was "not sufficiently qualified to represent [himjself in this charge that faces life imprisonment.” In a subsequent letter dated May 13, 1991, defendant thanked the Judge for taking time to determine whether he was capable of representing himself, expressing confidence that he would get a fair trial and the hope that, with his attorney’s help, he would soon earn his freedom.
 

 The case proceeded to trial, where the evidence summarized above was adduced. Additionally, the police chemist testified that the total weight of the mushrooms in Hopkins’ package was 932.8 grams (about two pounds), and that a 140-gram sample of the package contents contained 796 milligrams of psilocybin, a hallucinogen (Penal Law § 220.00 [9]; Public Health Law § 3306 [schedule I] [d] [19]). He did not know, however, the process by which psilocybin appears in mushrooms, whether naturally, by injection or some other means.
 
 *501
 
 Nor was there any evidence as to how much psilocybin would typically appear in two pounds of mushrooms.
 

 At the close of the People’s case, defendant moved to dismiss for insufficient proof that he knew the level of psilocybin in the mushrooms, and also requested a charge-down to seventh degree attempted criminal possession, which has no weight element. Both applications were denied, defendant was convicted as charged, and he was sentenced as a second felony offender to 10 years-to-life.
 

 The Appellate Division affirmed. The court held that a defendant must know the nature of the substance possessed, and acknowledged that the weight of the controlled substance is an element of the crime. The court declined, however, to read the statute as requiring that a defendant have actual knowledge of the weight. Instead, the court held that "the term 'knowingly’ should be construed to refer only to the element of possession and not to the weight requirement.” (184 AD2d 24, 27.)
 

 Finding ample evidence that defendant intended and attempted to possess psilocybin while knowing the nature of the substance, and that the weight of the psilocybin ultimately proved to be more than 625 milligrams, the Appellate Division sustained the conviction. Similarly, because there was no reasonable view of the evidence that the weight of the psilocybin in the mushrooms was less than 625 milligrams, the court rejected the argument that the trial court erred in refusing the charge-down.
 

 Finally, the Appellate Division concluded that, by virtue of his May 13 letter, defendant waived any objection with respect to the denial of his request to proceed
 
 pro se.
 

 We now reverse.
 

 II.
 

 Although the present case involves an attempt, analysis begins with the elements of the completed crime, second degree criminal possession of a controlled substance. Penal Law § 220.18 (5) provides:
 

 "A person is guilty of criminal possession of a controlled substance in the second degree when he knowingly and unlawfully possesses: * * *
 

 "5. six hundred twenty-five milligrams of a hallucinogen.”
 

 
 *502
 
 It is undisputed that the knowledge requirement of the statute applies to the element of possession
 
 (see also,
 
 Penal Law § 15.00 [2]), and that defendant must also have "actual knowledge of the nature of the possessed substance”
 
 (People v Reisman,
 
 29 NY2d 278, 285). At issue is whether defendant must similarly know the weight of the material possessed. That is a question of statutory interpretation, as to which the Court’s role is clear: our purpose is not to pass on the wisdom of the statute or any of its requirements, but rather to implement the will of the Legislature as expressed in its enactment
 
 (People v Smith,
 
 79 NY2d 309, 311).
 

 In effectuating legislative intent, we look first of course to the statutory language. Read in context, it seems evident that "knowingly” does apply to the weight element. Indeed, given that a defendant’s awareness must extend not only to the fact of possessing something ("knowingly * * * possesses”) but also to the nature of the material possessed ("knowingly * * * possesses * * * a hallucinogen”), any other reading would be strained. Inasmuch as the knowledge requirement carries through to the end of the sentence
 
 (see, People v Reisman,
 
 29 NY2d, at 285), eliminating it from the intervening element — weight—would rob the statute of its obvious meaning. We conclude, therefore, that there is a
 
 mens rea
 
 element associated with the weight of the drug.
 

 That reading is fortified by two rules of construction ordained by the Legislature itself. First, a "statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability” (Penal Law § 15.15 [2]). If any material element of an offense lacks a
 
 mens rea
 
 requirement, it is a strict liability crime (Penal Law § 15.10). Conversely, a crime is one of "mental culpability” only when a mental state "is required with respect to every material element of an offense”
 
 (id.).
 

 By ruling that a defendant need not have knowledge of the weight, the Appellate Division in effect held, to that extent, that second degree criminal possession is a strict liability crime
 
 (see,
 
 Penal Law § 15.10). That is an erroneous statutory construction unless a legislative intent to achieve that result is "clearly indicated]” (Penal Law § 15.15 [2]).
 

 In a similar vein, the Legislature has provided in Penal Law § 15.15 (1):
 

 "Construction of statutes with respect to culpability requirements.
 

 
 *503
 
 "1. When the commission of an offense defined in this chapter, or some element of an offense, requires a particular culpable mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally/
 
 'knowingly,’
 
 'recklessly’ or 'criminal negligence/ or by use of terms, such as 'with intent to defraud’ and 'knowing it to be false,’ describing a specific kind of intent or knowledge.
 
 When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears. ”
 
 (Emphasis added.)
 

 Accordingly, if a single
 
 mens rea
 
 is set forth, as here,
 
 [2]
 
 it presumptively applies to all elements of the offense unless a contrary legislative intent is plain.
 

 We discern no "clear” legislative intent to make the weight of a drug a strict liability element, as is required before we can construe the statute in that manner (Penal Law § 15.15 [1], [2]). Moreover, the over-all structure of the drug possession laws supports the view that a defendant must have some knowledge of the weight.
 

 There are six degrees of criminal possession of a controlled substance, graded in severity from a class A misdemeanor (Penal Law § 220.03 [seventh degree]) up to an A-I felony (Penal Law § 220.21 [first degree]). The definition of each begins identically: "A person is guilty of criminal possession of a controlled substance in the _____ degree when he knowingly and unlawfully possesses * * *.” The primary distinctions between one grade or another relate to the type and weight of the controlled substance, and in some instances the existence of an intent to sell
 
 (e.g.,
 
 Penal Law § 220.16 [1]) or intent to sell combined with a prior drug conviction
 
 (e.g.,
 
 Penal Law § 220.09 [13]).
 

 Taking hallucinogens as an example, knowing and unlawful possession of any amount, even a trace
 
 (see, People v Mizell,
 
 72 NY2d 651, 655) is seventh degree possession (Penal Law § 220.03); 25 milligrams or more, fourth degree (Penal Law § 220.09 [6]); 125 milligrams or more, third degree (Penal Law § 220.16 [10]; and 625 milligrams, second degree (Penal Law
 
 *504
 
 § 220.18 [5]). The maximum penalty for these crimes ranges from one-year incarceration to a life sentence, yet the only statutory difference relates to the weight of the drugs. To ascribe to the Legislature an intent to mete out drastic differences in punishment without a basis in culpability would be inconsistent with notions of individual responsibility and proportionality prevailing in the Penal Law
 
 (see, e.g.,
 
 Penal Law § 1.05 [4]).
 

 Our cases, too, have suggested that knowledge of the weight is an element. In
 
 People v Scarborough
 
 (49 NY2d 364, 374), for example, a case involving a similarly worded criminal sale of a controlled substance statute
 
 (see,
 
 Penal Law § 220.41), we concluded "that there is no substance to defendant Scarborough’s claim of insufficiency of proof on the issue of her
 
 knowledge of the weight
 
 or the nature of the contents of the glossine envelopes which she delivered to the buyer” (emphasis added).
 

 Similarly, in
 
 People v Reisman
 
 (29 NY2d 278, 287,
 
 supra),
 
 defendant — like defendant here — requested a charge-down to an offense that did not require possession of a specified amount. We rejected the claim that the trial court’s failure to deliver the charge was error, first noting that the "weight of the contraband in the carton was uncontradicted”
 
 (id.,
 
 at 287). If defendant’s knowledge of the weight were not an element, and the only issue were the objective weight of the substance, that would have been sufficient to dispose of the claim, as it was for the Appellate Division here (184 AD2d, at 28). But we continued:
 

 "Moreover, the nature of the case and its circumstances depended entirely on a commercial-like shipment of the large quantity. The case could stand or fall on that proof and no other. Consequently, under no view of the facts, because there was no basis in any of the evidence, could the jury find the accused innocent of the higher crime and yet guilty of the misdemeanor which required no minimum quantity” (29 NY2d, at 287).
 

 In the charge-down context, the Court’s reference to the nature and circumstances of the case could only have been an allusion to defendant’s knowledge of the weight.
 

 In sum, the plain language of the statute, rules of construction, the format of the drug possession laws and our cases all lead to the conclusion that the Appellate Division erred in
 
 *505
 
 holding that there is no
 
 mens rea
 
 requirement associated with the weight of a controlled substance.
 

 III.
 

 The People’s contrary argument is based in part on a concern that it would be "prohibitively difficult,” if not impossible, to secure convictions if they were required to prove that a defendant had knowledge of the weight. We disagree.
 

 Often there will be evidence from which the requisite knowledge may be deduced, such as negotiations concerning weight, potency or price
 
 (see, e.g., People v Acosta,
 
 80 NY2d 665, 668, n 1,
 
 and
 
 672-673). Similarly, for controlled substances measured on an "aggregate weight” basis
 
 (see, e.g,
 
 Penal Law § 220.06 [2]), knowledge of the weight may be inferred from defendant’s handling of the material, because the weight of the entire mixture, including cutting agents, is counted
 
 (see generally,
 
 Rosenblatt, New York’s New Drug Laws and Sentencing Statutes, at 45-48 [1973]; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 220, at 9 [comparing aggregate and pure weight statutes]).
 

 By contrast, that same inference may be unavailable for controlled substances measured by "pure” weight, like psilocybin. The effective doses of these drugs may be minuscule, and they are customarily combined with other substances to facilitate handling and use. In these circumstances it may indeed be difficult to show defendant’s knowledge of the weight. Although we cannot simply read the knowledge requirement out of the statute, these "compelling practical considerations” may inform our interpretation of that element
 
 (see, People v Mizell,
 
 72 NY2d, at 654).
 

 The Legislature has decided that persons who illegally possess larger quantities of controlled substances should be punished more severely; their conduct is more repugnant and presents a greater threat to society. Because drug possession is not a strict liability crime, however, an individual is not deserving of enhanced punishment unless he or she is aware that the amount possessed is greater. A purpose of the knowledge requirement, then, is to avoid overpenalizing someone who unwittingly possesses a larger amount of a controlled substance than anticipated.
 

 That legislative purpose can be satisfied, among other ways, with evidence that the pure weight of the controlled substance
 
 *506
 
 possessed by defendant is typical for the particular form in which the drug appears. This correlation between the pure weight typically found, and the pure weight actually possessed, substantially reduces the possibility that a person will unjustly be convicted for a more serious crime.
 

 To illustrate: a person may knowingly possess 50 doses of LSD on blotter paper but, understandably, have no awareness what the pure LSD weighs; upon chemical analysis it is determined that defendant actually possessed 2.5 milligrams. If there is evidence that a typical dose of LSD weighs .05 milligrams
 
 (see, Chapman v United States,
 
 500 US 453, 457), the jury could conclude, within the meaning of the statute, that defendant knowingly possessed more than 1 milligram, and convict of fourth degree possession (Penal Law § 220.09 [5] [1 mg or more]). If, however, because of some manufacturing defect unknown to defendant those 50 doses weighed 10 milligrams, defendant should not be convicted of more serious third degree possession (Penal Law § 220.16 [9] [5 mg or more]).
 

 There may of course be other ways of proving defendant’s knowledge within the meaning of the statute. Our purpose today, however, is not to survey all of the permissible methods but to clarify that the statute does in fact contain a weight-related mental culpability element.
 

 IV.
 

 With the foregoing principles in mind, we consider whether there was sufficient evidence to convict defendant of attempted second degree possession, an A-II felony.
 

 Certainly there was sufficient evidence from which the jury could conclude, beyond a reasonable doubt, that defendant attempted and intended to possess a two-pound box of hallucinogenic mushrooms. It is also undisputed that, upon testing, the mushrooms in the particular box defendant attempted to possess — the one sent to Hopkins by Scott — contained more than 650 milligrams of psilocybin. The issue we must decide, however, is whether sufficient evidence was presented at trial from which it could be inferred that defendant had the requisite knowledge of the weight.
 

 We disagree with the People’s suggestion that the evidence of defendant’s knowing attempt to possess two pounds of mushrooms, without more, could satisfy their burden of proof. The controlled substance here is psilocybin; had defen
 
 *507
 
 dont ordered a specific quantity of that drug, plainly that would satisfy the knowledge element. But defendant attempted to possess two pounds of mushrooms, only a small portion of which was pure psilocybin.
 

 Although in these circumstances defendant could properly be convicted of attempting to possess the amount of psilocybin that would typically appear in two pounds of hallucinogenic mushrooms, there was no evidence linking psilocybin weight to mushroom weight. Indeed, there was no evidence indicating whether psilocybin grows naturally or is injected into the mushrooms, or of the usual dose of the drug — matters not within the ken of the typical juror. We thus conclude on this record that there was insufficient evidence to satisfy the knowledge requirement within the meaning of the statute.
 

 That deficiency does not absolve defendant of all criminal liability. There is sufficient evidence to sustain a conviction for the lesser-included offense of attempted criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), which does not have a weight element.
 

 V.
 

 Finally, we briefly consider whether the trial court had a proper basis for denying defendant’s request to represent himself.
 

 A criminal defendant may be permitted to proceed
 
 pro se
 
 if the request is timely and unequivocal, there has been a knowing and intelligent waiver of the right to counsel, and defendant has not engaged in conduct that would interfere with a fair and orderly trial
 
 (People v McIntyre,
 
 36 NY2d 10, 17). Although the trial court in the present case perceived defendant’s legal skills to be wanting, and therefore denied the motion for defendant’s "own protection,” that was not a proper ground for decision. What we said in
 
 People v Davis
 
 (49 NY2d 114, 120), applies equally here:
 

 "To accept a defendant’s lack of knowledge of legal principles and rules of law or his unfamiliarity with courtroom procedures as the ground for concluding that he is not qualified to represent himself would in effect be to eviscerate the constitutional right of self-representation; such limitations could confidently be said to exist in nearly every criminal case in which the defendant had not received legal training. This, however, appears to
 
 *508
 
 have been the rationale for the court’s ruling in this case; nothing intimates that the trial court’s evaluation of this defendant as not capable or qualified to represent himself was because of any mental incompetence or illiteracy.”
 

 On this appeal, the People do not defend the trial court’s decision on the merits, instead arguing that the issue is not properly before us because (i) it was not identified in defendant’s rule 500.2 jurisdictional statement (22 NYCRR 500.2) and (ii) it was effectively waived in defendant’s May 13 letter. Neither argument has merit.
 

 Rule 500.2 (c) expressly provides that "inclusion and identification of issues shall not be binding on counsel for brief writing or oral argument purposes.” The issue-identification requirement is for subject matter indexing and calendaring
 
 (id.).
 
 Nor can defendant’s May 13 letter be read as a waiver of legal issues with respect to the propriety of the trial court’s denial of the motion.
 

 Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed with leave to the People to institute such proceedings as they deem appropriate respecting the lesser-included offense of attempted criminal possession of a controlled substance in the seventh degree.
 

 Judges Simons, Titone, Hancock, Jr., and Smith concur with Chief Judge Kaye; Judge Bellacosa dissents and votes to affirm for the reasons stated in the opinion by then-Justice Howard A. Levine at the Appellate Division (184 AD2d 24); Judge Levine taking no part.
 

 Order reversed, etc.
 

 [1]
 

 . Defendant knew, for instance, what a peremptory challenge was; the sentence he faced; the definition of an accomplice; that an indictment was not evidence; that the People had the burden of proof; that the reasonable doubt standard was operative; and the function of an objection.
 

 [2]
 

 . "Unlawfully” is not a term of mental culpability but means "in violation of article thirty-three of the public health law” (Penal Law § 220.00 [2]).