OPINION OF THE COURT
Joseph Fisch, J.
Defendants stand indicted for the crimes of criminal possession of a controlled substance in the second and third degrees, criminally using drug paraphernalia in the second degree (two counts) and weapons possession charges. They now move to dismiss the indictment on the ground that the Grand Jury proceedings were defective because the prosecutor did not instruct the Grand Jury with sufficient specificity on the element of knowledge of the weight of the controlled substance, citing People v Ryan (82 NY2d 497 [1993]). This court, after reviewing the Grand Jury minutes, and applicable law, denies the defendants’ motions.
[A] THE DEFENSE MOTION TO DISMISS IN LIGHT OF RYAN
The indictment against defendants charges their alleged *3 joint constructive possession of controlled substances in an apartment, from which premises the police also seized a weighing scale, records of drug transactions, a calculator, a strainer, a box of Reynolds Wrap and a cocaine crusher. The prosecutor instructed the Grand Jury on the elements of the crime of possession of a controlled substance in the second degree by tracking the exact language of Penal Law § 220.18 (1): "A person is guilty of criminal possession of a controlled substance in the second degree when he knowingly and unlawfully possesses * * * one or more preparations, compounds, mixtures or substances of an aggregate weight of two ounces or more containing a narcotic drug”. The term "knowingly” was so charged to the Grand Jury, and the prosecutor did not inform the Grand Jury that the element of knowledge must extend to the weight of the substance possessed. The defendants contend that this omission renders the Grand Jury proceeding defective and requires dismissal of the indictment.
In People v Ryan (supra), the New York Court of Appeals found that in any crime involving possession of a controlled substance where the degree of criminal liability is based on the weight of the controlled substance, under an aggregate or pure standard, the prosecution must prove beyond a reasonable doubt, at trial, that the defendant knew the weight. Thus, in Ryan (supra), the Court reversed the defendant’s conviction after a jury found that he unlawfully possessed two pounds of mushrooms containing psilocybin because the prosecution failed to prove he knew the weight of the amount of psilocybin. The Court in Ryan ruled that the trial court erred in refusing to charge the jury on the lesser included offense of criminal possession of a controlled substance in the seventh degree, i.e., possession of any amount of a controlled substance without regard to weight.
The Court in Ryan stated that its purpose was "to implement the will of the Legislature * * * [and] [w]e discern no 'clear’ legislative intent to make the weight of a drug a strict liability element” (People v Ryan, supra, at 502-503). The Court noted (at 505) that "[o]ften there will be evidence from which the requisite knowledge may be deduced, such as negotiations concerning weight, potency or price (see, e.g., People v Acosta, 80 NY2d 665, 668, n 1, and 672-673 [1993]). Similarly, for controlled substances measured on an 'aggregate weight’ basis (see, e.g., Penal Law § 220.06 [2]), knowledge of the weight may be inferred from defendant’s handling of the material, because of the weight of the entire mixture, includ *4 ing cutting agents, is counted (see generally, Rosenblatt, New York’s New Drug Laws and Sentencing Statutes, at 45-48 [1973]; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 220, at 9 [comparing aggregate and pure weight statutes]).” Defendant contends that the holding in Ryan requires an instruction in a Grand Jury proceeding that knowledge extends to weight in controlled substance crimes.
[B] ISSUES PRESENTED
The defense motion presents the court with two questions: (1) Is the holding in Ryan (supra) retroactive since this case was presented to the Grand Jury prior to the Ryan decision, and (2) Does the Ryan rule apply to a Grand Jury proceeding?
Lower courts are generally not faced with the issue of retroactivity. Indeed, one court, in declining to decide a post-judgment motion raising the retroactivity of the Court of Appeals decision excluding as unreliable hypnotically induced testimony (People v Hughes, 59 NY2d 523 [1983], cert denied 492 US 908 [1989]), stated that it did "not perceive that its function at the nisi prius level is to make far-reaching rules”. (People v Barnes, 123 Misc 2d 142, 147 [Sup Ct, Queens County 1984, Rotker, J.].) Accordingly, the court quite properly directed the defendant to seek his remedy in the appellate process.
By contrast, in the case at bar, the only forum is this court, because, absent a jurisdictional defect, a conviction supported by sufficient trial evidence precludes a challenge to the Grand Jury proceeding. The issue is therefore squarely before this court and must be confronted and decided.
[C] GENERAL PRINCIPLES OF RETROACTIVITY
The decisions of the United States Supreme Court on retro-activity appear to diverge along two lines. First, when a decision furthers the truth-finding function and bears directly on guilt or innocence, it is retroactive. (Brown v Louisiana, 447 US 323, 328 [1980].) See also Hankerson v North Carolina (432 US 233, 241 [1977]), quoting Ivan V. v City of New York (407 US 203, 204-205 [1972]), holding that In re Winship (397 US 358 [1970]), which required proof beyond a reasonable doubt in a juvenile delinquency adjudication, was retroactive: When an interpretation of a statute or rule " 'overcome[s] an aspect of the criminal trial that substantially impairs its *5 truth-finding function’ and renders it more difficult to convict, retroactivity is required.”
The second line of reasoning focuses on the retroactivity of constitutional principles not directly impacting on the truth-finding function. In such cases, a three-pronged test determined retroactivity: (1) the purpose to be served by the new standard; (2) the extent of reliance upon the prior standard; and (3) the effect of retroactivity upon the administration of justice.
See Linkletter v Walker (381 US 618 [1965]). In that case the rule excluding evidence in State courts seized in violation of the Fourth Amendment (Mapp v Ohio, 367 US 643 [1961]) was not retroactive to reverse a final State conviction. The purpose of the rule, to deter unlawful police conduct, would not be served by retroactive application; further, retroactively would adversely impact on the administration of justice in light of the State’s past reliance on the earlier doctrine. (See also, Stovall v Denno, 388 US 293, 297 [1967].) This three-pronged analysis was first applied to both final convictions, that is, convictions in which all appeals are exhausted and the time for filing a certiorari petition has lapsed or such petition was denied, and to convictions pending on direct review. (Stovall v Denno, supra.)
In the decisions that followed, the United States Supreme Court departed in certain instances from strict adherence to the three-pronged test. Thus, in United States v Johnson (457 US 537 [1982]), the Court constructed a retroactivity analysis for final convictions distinct from that applied to nonfinal convictions. It ruled that interpretations of the Fourth Amendment of the US Constitution would be henceforth retroactive to all cases pending on direct review, irrespective of the three-pronged Linkletter-Stovall criteria. Then in Griffith v Kentucky (479 US 314 [1987]), the Court held that any newly declared constitutional rule must be applied to all criminal cases on direct review. In so ruling the Court noted where a decision announced a new constitutional rule, it should be the controlling precedent applied to similar cases pending on direct review or not yet final. (Griffith v Kentucky, supra.)[1] The Court in Griffith (supra) retroactively applied the rule that a defendant in a State criminal prosecution could *6 establish a prima facie case of discrimination violative of the Fourteenth Amendment if the prosecutor used peremptory challenges to strike members of the defendant’s race from the jury venire.
[D] RETROACTIVITY TEST FOR ISSUE OF NEW YORK STATE LAW
In People v Favor (82 NY2d 254, 261 [1993]), the New York Court of Appeals explained retroactivity principles under State law, discussing "the bedrock assumptions that 'our government is one of laws, and not of men’ and that, consequently, judicial decisions reveal or elucidate, rather than create, the law (see generally, Linkletter v Walker, 381 US 618, 622-623; People v Pepper, [53 NY2d 213, 220] [1981]; see also, Desist v United States, 394 US 244, 258-259 [1969] [Harlan, J., dissenting]). Taken to their logical conclusion, these assumptions lead to the tenet that recently announced rules of law, including those that overrule prior decisions, are 'not "new law but an application of what is, and theretofore had been, the true law” ’ (Linkletter v Walker, supra, at 623, quoting Shulman, Retroactive Legislation, 13 Encyclopedia of Social Sciences, at 355, 356 [1934]).” While under this view, retroactive application of current rules would always be required, the Court of Appeals nevertheless held in "appropriate cases” a particular rule may be prospective, because the legal system relied on the earlier precedent. When deciding the retroactivity of State law not directly affecting the truth-finding function, the New York courts consider the same criteria set forth in Linkletter v Walker and Stovall v Denno (supra): (1) the purpose served by the former rule, (2) the extent of reliance upon the former rule, and (3) the effect of its retroactive application upon the administration of justice. (People v Favor, supra, at 262, citing People v Mitchell, 80 NY2d 519 [1992]; People v Pepper, supra; People v Morales, 37 NY2d 262 [1975].)
In People v Antommarchi (80 NY2d 247 [1992]), the trial court had questioned over half of the prospective jurors at sidebar concerning their opinions on various subjects in defendant’s absence. The New York Court of Appeals reversed, finding that in defendant’s absence this exploration of the jurors’ backgrounds and abilities to weigh evidence was error. In People v Mitchell (80 NY2d 519 [1992], supra), the Court of Appeals held the Antommarchi rule prospective. The rule involved State statutory law because its protection is broader than the constitutional right to be present at trial (see, People v Morales, supra; People v Mullen, 44 NY2d 1 [1978]). The *7 right was not retroactive because: (1) its purpose was not to cure constitutional infirmity in former practice but to activate the defendant’s role in jury selection; (2) trial courts had substantially relied on past practice; and (3) most, if not all, of the judgments currently on appeal would present this issue; retroactive application would substantially burden the administration of justice.
As in Federal law, this three-pronged New York State test for retroactivity is not applicable when the newly enunciated principle directly affects the truth-finding function. Then the new decision is retroactive because the unacceptable alternative would countenance radically disparate treatment of similarly situated individuals. (People v Laffman, 161 AD2d 111, 112 [1st Dept 1990]; see also, People v Hale, 142 AD2d 172, 175 [1st Dept 1988].) For example, a defendant’s right to be present at a Sandoval hearing (see, CPL 260.20) is generally retroactive because its purpose — to enable the defendant to contribute his unique knowledge of the relevant facts — relates to the accuracy of the hearing determination.[2] (People v Favor, supra.) The Sandoval proceeding directly implicates the fact-finding process; that ruling is often the pivotal factor in the decision to testify at trial. (See, People v Pokes, 79 NY2d 656 [1992], supra.) Further, a Sandoval ruling can weed out impeachment evidence of low probative worth. (People v Favor, supra, at 265, citing People v Sandoval, 34 NY2d 371, 376-378 [1974].) For these reasons, the right to be present at a Sandoval proceeding is retroactive, in contracts to the nonretroactivity of the right to be present at a sidebar voir dire.
[E] RYAVRULE IS RETROACTIVE
The Ryan decision (supra) is State law because it is the interpretation of a State statute, although there are inherent due process considerations. Prior to Ryan the instructions in the CJI(NY) (Criminal Jury Instruction Manual), the handbook of the Bench on charging juries, did not reflect that knowledge extends to the weight of the drug where the grade and degree of the drug crime is based on the weight. In light of this, Ryan does represent a departure from precedent, yet, under the principles of retroactivity, Ryan (supra) is not a "new rule”.
*8 " 'A judicial decision construing the words of a statute [for the first time] does not constitute the creation of a new legal principle.’ ” (People v Favor, supra, at 263, quoting Gurnee v Aetna Life & Cas. Co., 55 NY2d 184, 192 [1982], cert denied 459 US 837 [1982].) The Court in Ryan noted that its "purpose is not to pass on the wisdom of the statute or any of its requirements, but rather to implement the will of the Legislature as expressed in its enactment”. (People v Ryan, supra, at 502, citing People v Smith, 79 NY2d 309, 311 [1992].) "The Legislature has decided that persons who illegally possess larger quantities of controlled substances should be punished more severely; their conduct is more repugnant and presents a greater threat to society. Because drug possession is not a strict liability crime, however, an individual is not deserving of enhanced punishment unless he or she is aware that the amount possessed is greater.” (People v Ryan, supra, at 505.)
The Ryan rule directly affects the truth-finding function by imposing a heavier burden on the People to prove the element of intent. Since the decision in Ryan (supra) critically impacts on the proof of guilt of the crime charged, this court holds that it is retroactive even though it mandates a significant departure from past practice.
This court fully appreciates that the retroactivity of Ryan (supra) seriously affects the viability of a number of drug prosecutions. According to a recent report[3] of the Law Enforcement Council, an umbrella group of law enforcement agencies throughout New York State, Ryan puts at risk an estimated 4,000 cases or roughly 14% of all drug felonies indicted in 1993. However, any effort to limit the People’s burden as enunciated in Ryan is solely the province of the Legislature, which is the appropriate forum to address this issue.
[F] .RYANRULE INAPPLICABLE TO GRAND JURY PROCEEDINGS
With regard to the second issue before this court, i.e., does the Ryan rule apply to Grand Jury proceedings, it is clear that the Ryan rule was formulated in the context of consideration of the People’s burden of proof at a trial. This is seen from the language of the decision: "A purpose of the knowledge requirement, then, is to avoid overpenalizing someone who unwittingly possesses a larger amount of a controlled substance than anticipated” (People v Ryan, supra, at 505; emphasis added). Thus, it is evident that the Court of Appeals *9 was concerned with the People’s burden of proving the ultimate issue of guilt. Strictly speaking, a person is not "penalized” until convicted; although indicted, he is cloaked with the presumption of innocence until a plea or verdict of guilty. This fact illustrates the critical difference between a trial and a Grand Jury proceeding. A trial jury, which should be specifically instructed that the People must establish beyond a reasonable doubt that the defendant knows the weight of the controlled substance he is charged with criminally possessing, is a body distinct from a Grand Jury, which decides whether to indict. A Grand Jury proceeding is not a "mini trial” (People v Brewster, 63 NY2d 419, 422 [1984]). It is convened primarily to investigate crimes and determine if sufficient evidence exists to accuse and subject a person to criminal prosecution. (People v Valles, 62 NY2d 36, 38 [1984]; see, People v Sergeant, 193 AD2d 417 [1st Dept 1993], quoting People v Lancaster, 69 NY2d 20, 30 [1986], cert denied 480 US 922 [1987].) In the usual case, a Grand Jury discharges its function when it indicts based on evidence legally sufficient to establish that the accused committed a crime (CPL 190.65 [1]). A Grand Jury is not charged with the ultimate responsibility to determine guilt or innocence (People v Van Dusen, 56 Misc 2d 107 [Ontario County Ct 1967]; People v Vosburg, 21 Misc 2d 372 [Schenectady County Ct 1959]). In our criminal justice system, that is the duty of the petit jury, which assesses the evidence in light of the law and decides if the People proved the guilt of the defendant beyond a reasonable doubt. (People v Calbud, Inc., 49 NY2d 389, 394 [1980].)
People v Calbud, Inc. (supra) held that a Grand Jury does not have to be instructed with the same precision as a trial jury because of the "functional difference” between the two bodies. The prosecutor may inform the Grand Jury of the elements of the crimes at issue by reading applicable provisions of the Penal Law. In Calbud (supra) a prosecutor’s failure to advise the grand jurors on the nature of "contemporary community standards” in an obscenity prosecution was not grounds to dismiss the indictment since the Grand Jury’s determination did not hinge upon such instruction. Similarly, the prosecutor does not have to give a "moral certainty” instruction on circumstantial evidence to a Grand Jury. (People v Jennings, 69 NY2d 103 [1986].) In People v Goetz (68 NY2d 96 [1986]), a prosecution for attempted murder and related offenses where the defendant claimed self-defense against an alleged attempted robbery by the complainants, the *10 prosecutor instructed the Grand Jury to determine if defendant’s conduct was that of a reasonable man in his situation and circumstances. The prosecutor’s failure to explain "circumstances” or "situation” or to inform the Grand Jury that it could consider defendant’s statements that he had been "mugged” on other occasions was not grounds to dismiss the indictment. Goetz (supra) reaffirmed the principle that a lesser standard applies to an instruction on the law to a Grand Jury than that given to a trial jury (citing People v Valles, 62 NY2d 36, 38 [1984], supra; People v Calbud, Inc., supra, at 394; compare, CPL 190.25 [6], with CPL 300.12 [2]). This lesser standard is premised upon the different functions of the Grand Jury and the petit jury. As noted, the Grand Jury determines if sufficient evidence exists to accuse a person of a crime. The petit jury ultimately determines guilt or innocence, and may convict the accused only if the People have proven guilt beyond a reasonable doubt. (People v Goetz, supra, at 115.)
See also People v Crumbaugh (156 Misc 2d 782 [Sup Ct, Bronx County 1993, Marcus, J.]) where the court found that the failure to charge the Grand Jury on a lesser included offense, which would have been required in that case at the trial level, did not impair the integrity of the Grand Jury proceeding, relying, inter alla, on the distinction between the role of the Grand Jury and that of the petit jury.
In People v Korang (160 Misc 2d 604 [Sup Ct, Queens County, O’Dwyer, J.]) the defendant moved to dismiss the indictment for criminal possession of a controlled substance in the first degree on the ground that the evidence was legally insufficient to support the charge and that the instructions were defective. The court noted that if evidence existed to support a lesser included offense, the indictment may not be dismissed (citing CPL 210.20 [1] [b]; People v Leonardo, 60 NY2d 683 [1983]). The court also held that the defendant’s knowledge of the weight of the more than five ounces of cocaine measured by an aggregate weight standard may be inferred from his handling of the material (citing People v Ryan, supra). However, the court did not reach the issue of the sufficiency of the instructions.
In the case at bar, the Grand Jury was adequately instructed in the language of the relevant statute, that the defendants’ possession of the two or more ounces of cocaine must be "knowing”. This instruction was legally sufficient in light of the law imposing less stringent standards on required *11 instructions to a Grand Jury than imposed on instructions at trial. This court holds that under the established law, Ryan (supra) is inapplicable to a Grand Jury proceeding. Therefore, even absent the evidence before that body which included a scale, a calculator and records of drug transactions, the proceeding was not defective and defendants’ motion to dismiss is denied.

. The United States Supreme Court noted that it could not hear each case pending on direct review but it could instruct the lower courts to apply the new rule retroactively to cases not yet final.

. The Court did hold that in certain factual contexts, such presence might be superfluous and accordingly, in such cases, reversal would not follow. (People v Dokes, 79 NY2d 656, 662.)

. "1994 Legislative Priorities”.