OPINION OF THE COURT
Harold B. Beeler, J.
In People v Ryan (82 NY2d 497 [1993]), decided in December 1993, the Court of Appeals held that for any narcotics offense in which the weight of the drugs is an element of the crime, defendant’s knowledge of that weight must be proven. The significance of the Ryan ruling was apparent, but the range of its application was not immediately foreseen. Almost immediately, trial and appellate courts were flooded with motions seeking to set aside convictions and reargue previously denied inspect and dismiss motions.
To date, efforts to interpret the scope and intent of the Court of Appeals in Ryan (82 NY2d 497, supra) have generated as much controversy as agreement. Not only do trial courts differ, but the First Department differs significantly from the Second Department on basic matters of interpretation. (Compare, People v Sanchez, 205 AD2d 472 [evidence that the defendant "physically held” a package containing a controlled substance does not constitute sufficient evidence of "handling” to support an inference of knowledge of weight even under aggregate weight statutes], with People v Dillon, 207 AD2d 793 [in aggregate weight cases, knowledge of weight maybe inferred from evidence that the defendant "held” the substance, e.g., in this case, threw the substance out of the window].) Recently, the First Department itself issued multiple opinions in this area, prefaced by a concession that the Justices were unable to reconcile their views with respect to the applicability of People v Ryan to trial convictions which predate Ryan, where the issue of the legal sufficiency of the evidence concerning defendant’s knowledge of the drug’s weight has not been explicitly preserved. (See, People v Ivey, 204 AD2d 16.)
Against this backdrop of confusion, trial courts have only minimal guidance in applying the Ryan ruling. One category of cases which has generated a substantial number of Ryan motions are cases involving so-called "drug couriers”. Drug *315 couriers are lowly paid functionaries in the drug trade who personally transport drugs between sellers and locations in exchange for relatively small sums of money.
Considered below are six "drug courier” cases in each of which the defendant has moved for reinspection of the Grand Jury minutes in light of Ryan (82 NY2d 497, supra), and its progeny. In each case the defendant was arrested in a bus or train terminal holding or carrying a quantity of narcotics. In an effort to clarify the effect of the Ryan decision in this limited area, the court has considered these "drug courier” cases together.
Unlike the Ryan case (supra), which involved a pure weight statute, each of the defendants herein is charged under an aggregate weight statute in which the mixture of the substance as a whole, including any cutting agent, is weighed. In view of this distinction, the People argue that an inference of knowledge of weight can be drawn from the defendant’s "handling” of the drugs. While the explicit language of Ryan does support this argument (see, People v Ryan, supra, at 505), the First Department, in a recent decision in the companion cases of People v Sanchez, People v Garcia and People v Cleto (205 AD2d 472, supra) rejected this interpretation, holding that the fact that the defendant "physically held” a package containing a controlled substance does not constitute "handling” under Ryan and cannot support an inference of knowledge of weight, even where a defendant holds as much as 8% ounces of cocaine, over twice the statutory minimum for an A-1 felony. The court concluded that the "average person” cannot distinguish between the weights of objects measured by ounces and that to constitute "handling” there must, in addition to holding, be other evidence establishing defendant’s knowledge of the weight of the drugs such as the close proximity of drug paraphernalia (People v Love, 204 AD2d 97 [1st Dept 1994]) or evidence of the defendant’s prior experience as a drug dealer (People v Sanchez, supra).
Turning to the six cases under consideration, in People v Juwara (indictment No. 9353/93) the defendant was arrested at the Port Authority Bus Terminal after being observed in possession of a foldover black travel bag, in which there was a large plastic bag containing six smaller plastic bags with a total of over 2% ounces of cocaine. Defendant was charged with criminal possession of a controlled substance in the second degree (possession of two or more ounces of a narcotic drug).
*316 This case falls squarely under the logic of Sanchez (205 AD2d 472, supra) in that the fact that the defendant physically held the drugs is not sufficient to support an inference that he knew the weight of the drugs possessed. Accordingly, as to indictment No. 9353/93, defendant Juwara’s motion is granted and the sole count of criminal possession of a controlled substance in the second degree is reduced to criminal possession of a controlled substance in the seventh degree.
Defendant Juwara is also the subject of a second indictment. Under indictment No. 11821/93 the defendant is charged with two counts of criminal possession of a controlled substance in the third degree, the first count based purely on the weight of the drug possessed (one-half ounce or more of a narcotic drug), while the second count is predicated on a possession with intent to sell theory. In this case the defendant was arrested at Penn Station on a tip from Amtrak Police, and was found to be in possession of drugs and paraphernalia in that he had over one-half ounce of cocaine in two clear plastic bags within another bag strapped to one ankle; and 206 empty vials and 210 tops strapped to his other ankle.
Had the defendant merely been in physical possession of this quantity of drugs no inference of knowledge would have been permissible under Sanchez (supra). Here, however, the defendant distinguishes himself from the typical courier by his possession of drugs and paraphernalia. It is not typical for a courier to transport paraphernalia in addition to drugs. Rather, the presence of paraphernalia suggests that the defendant is not merely a courier, but in business for himself, or at a minimum, has some further involvement in the packaging or sale of the drugs. Involvement in the packaging or sale of the drugs, in this court’s opinion, would supply a reasonable basis for inferring knowledge of the weight of the drugs possessed. The value of drugs is so inextricably linked to purity and weight that anyone in the business of packaging or selling drugs must develop some familiarity with relative weights. Even under Sanchez, the facts presented to the Grand Jury in this case are, therefore, sufficient to support an inference that the defendant knew the quantity of drugs he possessed. (See, People v Love, supra.) Accordingly, defendant’s motion to reduce count one is denied.
The second count charging defendant with criminal possession of a controlled substance in the third degree on a possession with intent to sell theory is also legally sufficient. While it may be unreasonable to infer that a drug courier *317 knows, within a matter of ounces, the exact quantity of drugs he is transporting, it is not unreasonable to infer that he knows he is transporting a quantity of drugs which is intended for further distribution. Both the location (a transportation facility) and the quantity of drugs possessed (more than any person ordinarily would have for personal use) amply support an inference that the defendant knew the drugs were for resale.
The Sanchez opinion (supra) itself draws this distinction between possession with knowledge of weight and possession with intent to sell (or distribute), holding that "[i]t is well-established that the element of intent to sell may be established by proof that defendant possessed a substantial quantity of drugs (see, People v Alvino, 71 NY2d 233, 245).” (205 AD2d, at 473, supra.) Accordingly, defendant’s motion to reduce the second count of indictment No. 11821/93 is also denied.
In People v Pitterson (indictment No. 8981/93), the defendant was observed at the Port Authority Bus Terminal in possession of a knapsack. He was then seized after boarding the bus and his travel bag was found to contain a brown paper bag within which was another plastic bag containing 506 mini ziplock bags of alleged cocaine. Three hundred and fifty bags were analyzed and found to contain over 2 Vs ounces of cocaine. The one-count indictment charges the defendant with criminal possession of a controlled substance in the second degree.
The evidence in this case that the drugs were packaged in numerous small bags does not meet the Sanchez criteria of "holding plus”. Unlike the separately packaged vials in the second Juwara indictment, the prepacked baggies are not the type of "paraphernalia” that support an inference that the defendant is involved in the actual packaging or sale of the drugs. The fact that the drugs were packaged in a form ready for final distribution further supports an inference that defendant knew the drugs were for further distribution thereby supporting an inference of intent to sell; it does not provide any real evidence that would support an inference that the defendant knew the quantity of drugs possessed or had any role in any prior or subsequent stage of their distribution. Accordingly, the charge of criminal possession of a controlled substance in the second degree is reduced to criminal possession of a controlled substance in the seventh degree.
*318 In People v Landers (indictment No. 3924/93), the defendant was observed with another individual in the Port Authority Bus Terminal coming down an escalator in possession of a small duffle bag. Upon seizing the defendant, the police recovered from the duffle bag one plastic bag containing 2 Vs ounces of cocaine. Defendant was indicted for one count of criminal possession of a controlled substance in the second degree.
This fact pattern, like defendant Juwara’s first indictment, is close to those considered by the Appellate Division in Sanchez (supra). Absent any additional evidence of paraphernalia or defendant’s expertise in the drug trade, there is insufficient evidence from which to infer that the defendant knew the weight of the drugs he possessed. Accordingly, criminal possession of a controlled substance in the second degree is reduced to criminal possession of a controlled substance in the seventh degree.
Defendant Landers also moves to dismiss the indictment under the authority of the Court of Appeals decision in Matter of Wesley M. (83 NY2d 898 [1994]), which held that a juvenile delinquency petition which relied on a "certified laboratory report” containing inadmissible hearsay regarding the nature of the substance sold was facially insufficient. The court has reviewed the Grand Jury minutes and finds that the report submitted to the Grand Jury in this case, which certified that the report was a "true and full copy of the original report made by me” (emphasis added) over the signature of the chemist is legally sufficient. (Matter of Deshone C., 207 AD2d 756.)
In People v Pryor (indictment No. 9376/93), the defendant was observed holding a black travel bag prior to boarding a bus at the Port Authority Bus Terminal. Upon seizing the defendant, his travel bag was found to contain a brown paper bag in which there were two smaller brown paper bags containing 13% ounces and 2 grains of cocaine. Defendant was indicted for criminal possession of a controlled substance in the first degree (possession of four ounces or more of a narcotic drug) and criminal possession of a controlled substance in the third degree (possession with intent to sell).
This case is virtually identical to Landers, in that there are no escalating factors such as the presence of paraphernalia, or any other indicia of defendant’s participation in the packaging or sale of the drugs. There is, however, one distinction between the two cases, which is that in defendant Pryor’s *319 case, the quantity of drugs possessed is significantly larger, equaling almost three times the minimum weight required by the statute. While the court does have some question as to whether anyone, no matter how peripheral to the drug trade, could be unaware of the weight of this quantity of drugs, the amount is not so much greater than the 8% ounces possessed by the defendant in Sanchez (supra). Accordingly, defendant’s motion is granted to the extent of reducing the first count of criminal possession of a controlled substance in the first degree to criminal possession of a controlled substance in the seventh degree and is otherwise denied.
In the last case under consideration, People v Hanson (indictment No. 9821/89), the defendant was observed carrying a black leather or vinyl backpack inside the Port Authority Bus Terminal. Upon seizing the defendant, the police recovered from his bag two clear plastic ziplock baggies containing 8% ounces of crack cocaine and a brick containing 2 pounds and 32 grains of cocaine. Defendant was indicted for one count of criminal possession of a controlled substance in the first degree.
While this court agrees with the First Department in Sanchez (supra) that the average person, or even the average drug courier, cannot distinguish between the weights of objects measured in ounces, that reasoning cannot be extended to an individual transporting a brick of drugs measured in pounds. This court finds that possession of over 2% pounds of narcotics, over 10 times the minimum statutory weight, is distinguishable from the substantially smaller quantity of drugs possessed in Sanchez; and that at these large weights proof of physical holding on its own is sufficient to support an inference of knowledge of weight.
In Hanson, the defendant also challenges the adequacy of the Grand Jury instructions in light of Ryan (82 NY2d 497, supra). In the Hanson presentation, which occurred in 1989, the District Attorney did not specifically charge the Grand Jury that it must find that the defendant knew the weight of the drugs possessed. Instructions to the Grand Jury need not be as precise as those given to a petit jury, but must provide enough information to enable the Grand Jury to intelligently decide whether there is legally sufficient evidence to establish all of the elements of the crimes charged. (People v Calbud, Inc., 49 NY2d 389 [1980].) Under the circumstances of this *320 case, the quantity of narcotics is so large that the absence of a specific charge regarding knowledge of the weight, even if erroneous, did not so affect the integrity of the Grand Jury proceedings as to require dismissal of the indictment. (See, People v Serrano, 162 Misc 2d 721.)