*752 OPINION OF THE COURT
Leonard P. Rienzi, J.
Defendant moves to vacate her judgment of conviction pursuant to CPL 440.10 (1) (h) and pursuant to the court’s inherent power to issue a writ of error coram nobis. Defendant asserts that the People presented no evidence at trial of her knowledge of the weight of the heroin she allegedly possessed and thus her guilt was not proven beyond a reasonable doubt and the conviction was obtained in violation of her right to due process of law under the New York and United States Constitutions.
Defendant bases her motion on People v Ryan (82 NY2d 497 [1993]) and seeks retroactive application to her case in which the direct appeal process has been concluded.
In order to prevail defendant must first demonstrate that the "judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States” (CPL 440.10 [1] [h]). Defendant asserts that the failure of the trial court to instruct the jury pursuant to People v Ryan (supra) constitutes a violation of due process of law.
In order to prevail defendant must also demonstrate that her motion to vacate is not precluded by CPL 440.10 (2) (a) or (c). Thus, defendant must demonstrate that the "ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment” and "since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue” (CPL 440.10 [2] [a]; emphasis added). In addition, defendant must demonstrate that the motion is not precluded by CPL 440.10 (2) (c), which holds that although sufficient facts appear on the record to have permitted appellate review of the issue raised upon the motion, the failure to seek appellate review of the issue was not based on defendant’s unjustifiable failure to raise the particular issue in the appeal which was actually perfected. (See, CPL 440.10 [2] [c].)
The facts of the case as they relate to defendant’s contentions may be simply stated.
In early 1985 a police investigation led to the conclusion that the second floor apartment at 149 Highland Place in Brooklyn was being used for the packaging and distribution of heroin. The apartment was occupied by Manny Vargas, who *753 the police suspected was the kingpin of this particular drug trafficking operation. The police set forth the facts supporting their conclusion in an affidavit and obtained a search warrant for the location. On February 9, 1985, at 8:45 p.m., the police unit consisting of approximately a dozen officers executed the search warrant and raided the apartment.
On the dining room table (approximately three feet by six feet and surrounded by four to six chairs) the police found the following items in open view: a large clear plastic bag containing approximately five ounces of heroin, 18 glossine envelopes rubber stamp imprinted with the brand name "711” containing heroin, a tin foil packet of cocaine, four boxes containing thousands of empty glossine envelopes, a stock of empty blue glossine envelopes rubber stamp imprinted with the brand name "7-UP”, a brown bottle of white "cutting” substance, a set of scales, two spoons and a strainer (each of which contained residue of heroin), a box of playing cards with two bent cards (used for mixing and cutting narcotics with dilutant) lying on the table, a rubber stamp "711” for imprinting a heroin brand name, three inkpad markers, a scotch tape dispenser and a beeper. In a gym bag adjacent to the table the police found two additional large bottles of a substance used as a dilutant, two strainers, five spoons and three markers. Concealed in other areas of the location the police found a second scale, two loaded handguns and a large sum of money. Expert testimony established that the street value of the heroin on the table was approximately $40,000.
As the police announced their presence and were about to enter the building, they were observed by a codefendant (Orlando Rios) who closed the front door of the building in their faces and ran up the stairs while yelling something in Spanish. The police then used a battering ram to gain entry to both the outer door on the ground floor of the building and the second floor door to the particular apartment. When the police finally entered the apartment, none of the six occupants was in the dining room with the contraband.
One codefendant (Jose Caban) was found in the bathroom holding a plate of glass over a flushing toilet containing milky white water. Defendant was found in a right rear bedroom with a codefendant, Alexandra Martinez, who had just broken the rear bedroom window with a chair and was attempting to exit, as the police were entering the apartment. Other code *754 fendants were found in different areas of the apartment. The six occupants of the apartment were arrested.[1]
In light of the fact that no narcotics or other contraband were found on the person of the defendant (or any codefendant) when the police finally gained entrance to the apartment, the People relied on the "drug factory” statutory presumption of knowing possession in Penal Law § 220.25 (2).
In addition to the top charge in the indictment (criminal possession of a controlled substance in the first degree, an A-I felony), the court submitted to the jury possession of a controlled substance in the seventh degree, a class A misdemeanor, as a lesser-included offense. The court also submitted criminal possession of a controlled substance in the third degree (intent to sell) and criminal possession of drug paraphernalia. The trial jury convicted defendant and the two codefendants on trial with her of criminal possession of a controlled substance in the first and third degrees. All were found not guilty of criminal possession of drug paraphernalia.
The Appellate Division affirmed defendant’s conviction (150 AD2d 507 [2d Dept 1989]). It ruled that the evidence at trial "was legally sufficient to establish defendant’s guilt * * * the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]). The defendant failed to rebut the presumption of possession set forth in Penal Law § 220.25 (2), which under the facts and circumstances of this case clearly applied to her” (150 AD2d 507). Leave to appeal was denied by the Court of Appeals (74 NY2d 816 [1989]).
At the outset it must be noted that the defendant did not register any objection to the language used by the court in defining the elements of each crime and the People’s burden with respect to each element. After the court’s charge to the jury at the close of the case, defendant’s attorney was asked if he had any exceptions or additional requests to charge. At first, defendant had neither an exception nor an additional request to charge. After unrelated colloquy, defendant stated a single exception, a general objection to the fact that the room presumption was charged. There was no objection to the specific language of the legal instruction which was delivered.
*755 defense counsel: "The only exception I would take to the charge and I discussed this earlier, you made it clear to me I had no legal right to. I take exception to the presumption, the presumption unlawfully and unfavorably shifts the burden.
"I realize Your Honor feels constrained to charge presumption. I would just take exception to that.”
The first note from the jury during deliberations requested a readback of elements of the crimes charged. Again, defendant registered no objection and suggested no alternative to the language used by the court to instruct the jury on the elements of each crime. Nor did the defendant object to a supplemental instruction to the jury on the statutory presumption.
In stark contrast, the defendant in Ryan raised a specific objection ("insufficient proof that he knew the level of psilocybin in the mushrooms”) and requested a charge-down, alerting the court to his contentions at a time when remedial action was possible. (People v Ryan, 82 NY2d 497, 501, supra.)[2]
In People v Dekle (56 NY2d 835 [1982]), the defendant took no exception to the language of the charge on an element of the crime. In response to defendant’s contention on appeal that the evidence was legally insufficient to support that element and thus violated his right to due process of law, the Court of Appeals stated: "Nor is there a due process violation when there is evidence from which a rational trier of fact could find the essential elements of the crime as those elements were charged to the jury without exception beyond a reasonable doubt. There is neither constitutional nor jurisprudential error in permitting guilt to be determined under a penal statute as construed by the common assumption of both attorneys and the court. To hold otherwise is to encourage gamesmanship and waste judicial resources in order to protect a defendant against a claimed error protection against which requires no more than a specific objection on his part” (People v Dekle, supra, at 837).
In addition, defendant’s motion to dismiss for lack of evidence made no reference whatever to the specific issue of knowledge of the weight of the narcotics. The Appellate Division, Second Department, has ruled that failure to raise *756 the specific knowledge of weight objection at trial leaves that issue unpreserved for appellate review. (People v Okehoffurum, 201 AD2d 508 [2d Dept 1994]; CPL 470.05 [2].)
In People v Cona (49 NY2d 26 [1978]), defendants appealed on the theory that the evidence at trial was legally insufficient based on the absence of corroboration of an accomplice’s testimony. The Appellate Division reversed the convictions. The Court of Appeals reinstated the convictions despite the lack of corroboration based on defendants’ failure to preserve the issue through a specific objection: "To create and preserve a question of law amenable to appellate review, a defendant in a criminal case normally must raise that issue before the court of original jurisdiction * * * In the instant case, no objection was made to that portion of the court’s charge which dealt with the application of the accomplice corroboration rule * * * hence, under settled rules of law and statutory construction, these defendants failed to preserve a question of law as to the correctness of that portion of the charge” (People v Cona, supra, at 33 [citations omitted]).
In the footnote which follows, the Court of Appeals dealt with the argument that a general motion to dismiss for legally insufficient evidence preserved the specific lack of corroboration argument raised on appeal: "It has been suggested that this issue was preserved for appellate review because of a motion to dismiss for insufficient evidence. Our examination of the record, however, persuades us that this motion, although formally made on behalf of all defendants, was not specifically directed at the failure to require corroboration for Buchalski’s testimony about these defendants. Conspicuous by its absence is any suggestion that the People’s proof as to these seven defendants was insufficient due to the failure to corroborate Buchalski’s testimony * * * At any rate, the failure to specify the lack of corroboration for Buchalski’s testimony as a basis for the motion to dismiss the case against these seven defendants precludes later use of that motion as a vehicle for creating a question of law on this point” (People v Cona, supra, at 33, n 2).
Thus at no point during the trial did defendant preserve for appellate review the specific issue of whether the People adduced legally sufficient evidence establishing that she had knowledge of the weight of the heroin. (CPL 470.05 [2]; People v Logan, 74 NY2d 859 [1989]; People v Bynum, 70 NY2d 858 [1987]; People v Dekle, 56 NY2d 835 [1982], supra; People v Udzinski, 146 AD2d 245, lv denied 74 NY2d 853 [1989]; People *757 v Wilson, 185 AD2d 910, lv denied 80 NY2d 978 [1992]; People v Cona, 49 NY2d 26 [1978], supra.) Nor did defendant’s appeal raise the specific issue which she raises in this motion. The specific "ground or issue raised upon the motion” (CPL 440.10 [2] [a]) (legal sufficiency of proof of knowledge of weight) was neither preserved at trial by specific objection nor "previously determined on the merits upon an appeal from such judgment” (CPL 440.10 [2] [a]).
Thus, the judgment against defendant was not obtained in violation of due process of law. Assuming, arguendo, there was a violation of due process of law, and assuming further that the issue raised on the motion (despite the lack of specific objection) was previously determined on appeal, CPL 440.10 (2) (a) would nonetheless require denial of defendant’s motion, for there has been no "retroactively effective change in the law controlling such issue” (emphasis added). The issue of law which defendant raises is whether the People adduced legally sufficient evidence at trial to prove beyond a reasonable doubt defendant’s knowledge of the weight of the heroin. At trial the People based their case on the "drug factory” statutory presumption in Penal Law § 220.25 (2). Thus the fundamental issue the court must resolve is the relationship between the statutory presumption of Penal Law § 220.25 (2) and the People’s burden to prove knowing possession, as that phrase is defined in People v Ryan (supra), beyond a reasonable doubt.
As it relates to this case the statute reads as follows: "The presence of a narcotic drug * * * in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found” (Penal Law § 220.25 [2] [emphasis added]).
The statute reflects a commonsense response by the Legislature to the fact that no one in a narcotics packaging operation from kingpin to supervisor to mill hand is likely to remain seated at the worktable or to stuff narcotics into one’s pockets as the gendarmes are breaking down the door to make arrests. The clear intent of the Legislature was to hold "each and every person in close proximity” accountable for the narcotics work product in open view. Nor did the Legislature intend that those at whom the presumption was aimed should be able to escape responsibility by walking into an adjacent room as *758 the police are breaking down the door. While the drugs must be "in open view in a room,” there is no requirement in the statute that "each and every person in close proximity” be in the same room. In the words of the Practice Commentaries to the statute: "The presumption was intended to address the issue of proof of knowing possession by those who were supervising or participating in the preparation of drugs for resale but who did not have personal physical possession of the drugs when the police lawfully entered the premises” (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 220.25, at 47 [emphasis added]).
The clear and unambiguous purpose of the statute is to provide proof of knowing possession for narcotics found in the specific circumstances delineated in the statute. Once the prosecution has proven the underlying facts: the presence of narcotics, in open view, in a room, under circumstances evincing an intent to mix, compound, package or prepare for sale, the People are entitled to rely on the presumption ("presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found” [Penal Law § 220.25 (2)]) as part of their prima facie case. (See, People v Leyva, 38 NY2d 160, 169 [1975].) As the Court of Appeals stated in People v Daniels (37 NY2d 624 [1975]): "When narcotics are found in open view in a room on private premises, every person 'in close proximity’ to the drugs at the time of discovery is presumed by statute to have knowingly possessed them” (People v Daniels, supra, at 630-631 [emphasis added]). "In close proximity” includes rooms in the apartment other than the room where the narcotics were found. (See, People v Daniels, supra.)
As the Court of Appeals stated in People v Ryan: " '[K]nowingly’ does apply to the weight element * * * We conclude, therefore, that there is a mens rea element associated with the weight of the drug” (People v Ryan, 82 NY2d 497, 502, supra). As the Court of Appeals pointed out, "[o]ften there will be evidence from which the requisite knowledge may be deduced” (People v Ryan, supra, at 505).
The statutory presumption provides "presumptive evidence of knowing possession” (Penal Law § 220.25 [2]). The concept of knowing possession in Penal Law article 220, as defined by the Court of Appeals in People v Ryan (supra) includes knowledge of both the nature and weight of the substance possessed. Considering the unambiguous language of the statutory pre *759 sumption, the obvious intent of the Legislature and the unbroken line of appellate cases affirming statutory presumption convictions with weight elements, it makes no sense to dissect the term "presumptive evidence of knowing possession” (Penal Law § 220.25 [2]) and apply it to the nature of the substance, but withhold its application from the quantity of the substance involved.
The Court of Appeals took great pains in Ryan to point out that its decision was simply a question of "statutory interpretation.” (See, People v Ryan, supra, at 499, 502.) The Court pointed out that its role and purpose were clearly "not to pass on the wisdom of the statute or any of its requirements, but rather to implement the will of the Legislature as expressed in its enactment” (People v Ryan, supra, at 502 [citation omitted]).
The words used by the Legislature in the statutory presumption are crystal clear. The intent of the Legislature to hold each and every person found in narcotics packaging and distribution centers accountable for the work product present is crystal clear. To limit the applicability of the presumption to the nature of the substance and thereby exclude it from the quantity, ignores the language of the statute and eviscerates the intent of the Legislature.
A presumption is sustainable when there is a rational connection which assures a "reasonably high probability” that the presumed fact follows from those facts proved directly. (See, People v Leyva, 38 NY2d 160, 166 [1975], supra.)
In the instant case the nature and extent of the underlying facts proven at trial permitted the jury to infer knowing possession (including knowledge of both the nature of the substance and its weight) by each and every person in close proximity to the narcotics. Six people were present in the apartment. The large dining room table was surrounded by four to six chairs. The table was not set for a party, but rather was set up to facilitate a narcotics packaging assembly line. The police found on the table the raw material, the processing material, the packaging material and the manufacturing tools for the production of two different street brands of heroin. Based on the volume and nature of the objects on the table, the trial jury as the finder of fact might readily infer that an ongoing group effort was interrupted by the arrival of the police.
Approximately five ounces of heroin was found in a single *760 bag. Dilutant to cut the potency of heroin, a scale to weigh it, two spoons (each with residue of heroin) to move and mix the heroin and dilutant, a strainer (with residue of heroin) to achieve consistency of texture, a box of playing cards and two cards already outside the box (and already bent) for mixing and cutting, support the inference of a multiplicity of assigned tasks consistent with a more than one person operation. In addition the status of the different groups of glossine envelopes suggests a continuum of activity by a number of participants. Eighteen envelopes were already filled with heroin and were already stamped with the brand name "711”. A supply of blue glossine envelopes had already been imprinted with the brand name "7-UP”, but had not yet been filled with heroin. There were four boxes containing thousands of glossine envelopes which had not yet been stamped with a brand name or filled, although a rubber stamp "711” and three stamp pad markers for imprinting, and heroin for inserting were present on the table. Present on the table was a beeper used to facilitate communications with suppliers, retailers or customers. In a gym bag adjacent to the table was found additional dilutant and mixing tools. Elsewhere in the apartment the police found other "tools of the trade”, loaded guns for protection and a large sum of United States currency in small bills.
The "baby shower” scenario offered to the jury by the defendants on trial put forth the theory that Manny Vargas abandoned approximately $40,000 worth of heroin in the midst of preparation for sale after his wife and five casual acquaintances had gathered for a party. The trial jury also heard evidence suggesting that an additional undetermined quantity of white powder of undetermined value was dumped into the toilet and flushed by Jose Caban, one of the "guests” at the party, as the police were entering the apartment. A jury using its common sense might suspect that an even larger quantity of heroin than the five ounces found on the table had been flushed to oblivion, since it makes no sense to flush away a small quantity of contraband while leaving a larger quantity for discovery by the police. When another "guest”, Orlando Rios, was leaving he bumped into the police raiding party at the front door of the building. He slammed the door in their faces and ran up the stairs screaming in Spanish. The police arrested the defendant and Alexandro Martinez, another "guest,” in the rear bedroom after he had broken the window with a chair as the police raiding party was fanning into the apartment from the front door.
*761 Based on the evidence presented at trial, it was the responsibility of the court to instruct the jury on the statutory presumption. It was the responsibility of the jury to weigh and evaluate the evidence, to draw rational, commonsense conclusions from the evidence, and to assess the credibility of witnesses in order to determine whether the permissive inference of the presumption had been sustained or had been rebutted. The trial jury as the finder of fact had the absolute right to reject the "baby shower” defense, if it chose to do so, and rely on the evidence which supported the presumption to find "presumptive evidence of knowing possession * * * by each and every person in close proximity” (Penal Law § 220.25 [2]) to the narcotics.
Thus, assuming arguendo there was a violation of due process of law (which there was not) and assuming arguendo that defendant preserved the issue (which she did not), and assuming arguendo that she raised the specific issue on appeal (which defendant did not), since defendant’s guilt is based on the statutory presumption (Penal Law § 220.25 [2]), there has not been, since the appeal, a retroactively effective change in the law controlling such issue. Thus the court must deny defendant’s motion. (CPL 440.10 [2] [a].)
In addition, although defendant seeks to come within the exception delineated in CPL 440.10 (2) (a) by her assertion that the issue was preserved at trial, litigated on appeal and rendered reviewable through CPL 440.10 (2) (a) based on Ryan (supra), a compelling argument can be made that the court must deny defendant’s motion pursuant to CPL 440.10 (2) (a).
An appellate court, evaluating defendant’s claim of error at the trial, clearly would have found sufficient facts within the four corners of the record of defendant’s trial to adjudicate defendant’s claim. The evidence is found in the record. The court’s instructions are found in the record.
The court must deny a motion to vacate when, "[although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant’s * * * unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him” (CPL 440.10 [2] [c]). Just as the defendant in People v Ryan (82 NY2d 497, supra) raised a specific objection to the court’s charge, made a specific request to charge and thereby *762 alerted the trial court to his contention and obtained ultimate vindication of his position through direct appeal, defendant Judy Perez likewise had the same opportunity to raise the issue before the trial court, to enter a specific objection, to request amplification of the court’s charge or alternative language, and to appeal if the asserted error had been preserved by timely objection. Defendant failed to preserve the issue in the trial court and to pursue the specific issue in the appeal which was eventually perfected. Such unjustifiable failure cannot serve to expand appellate review through collateral attack in direct contravention of CPL 440.10 (2) (c). (See, People v Cooks, 67 NY2d 100 [1986].)
Both sides have spent considerable effort in their briefs on the issue of the retroactivity of the decision in People v Ryan (supra). Since Ryan was "a question of statutory interpretation” it was decided as a question of State law. Accordingly, retroactivity will eventually be decided based upon the principles delineated in People v Pepper (53 NY2d 213 [1981]). Under this test the court must evaluate three factors: "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application” (People v Mitchell, 80 NY2d 519, 528 [1992], citing People v Pepper, 53 NY2d 213, 220 [1981]). The purpose of the rule, according to the Court of Appeals, is "to avoid overpenalizing someone who unwittingly possesses a larger amount of a controlled substance than anticipated.” (People v Ryan, supra, at 505.) Since the penalties under our drug laws are severe and the punishment in many cases is measured by the weight of the narcotics, it would clearly violate fundamental fairness to inflict severe punishment on an "unwitting” possessor who raised the specific Ryan-type objection. Thus, a compelling argument can be made that under the first prong of the Pepper analysis, full retroactive application is appropriate for those defendants who raised the specific objection and preserved the issue. In considering the second and third prongs of Pepper, "the extent of reliance” on pre-Ryan statutory interpretation (by appellate courts, trial courts and litigants) has been virtually universal and therefore "the effect on the administration of justice” is potentially catastrophic.
In the most recent five-year period for which figures are available (1989-1993), there have been 126,278 felony drug convictions in New York State according to the Division of Criminal Justice Services. Notwithstanding the fact that not all of these felony convictions contained a weight element and *763 only a small proportion involve trial convictions, the sheer volume of felony narcotics convictions over this recent time period provides some indication of the potential effect of granting collateral relief pursuant to Ryan (supra) to defendants who did not preserve the issue.
Weight has been an element of New York State drug laws since 1951. (See, former Penal Law § 1751.) In article 220 of the Penal Law at present there are 54 felonies which have the weight of the controlled substance as an element of the crime. Every class A narcotics felony in the Penal Law contains a weight element.[3]
Since there is no time limit on claims pursuant to CPL 440.10, and a defendant "may move at nisi prius to vacate the judgment at any time” (People v Corso, 40 NY2d 578, 580 [1976]), thousands of convicted felons, from teenagers to senior citizens, whether or not incarcerated, may move with Ryan retroactivity claims to remove the stigmatization of the felony conviction. If a fraction of those convicted of narcotics felonies with weight elements seek Ayon-based relief, the reversal, or even reconsideration, of these cases on Ryan grounds "would create a substantial burden on the administration of justice and delay the disposition of countless pending cases” (People v Mitchell, supra, at 529). Whatever the eventual decision on retroactivity, it is inconceivable that Ryan relief will be extended collaterally to defendants who did not preserve the issue with a specific Ryan objection.
This court does not reach the issue of the retroactivity of Ryan (supra) since resolution of that issue is clearly not relevant to deciding this case where guilt is premised upon the statutory presumption.
Defendant’s motion to vacate the conviction based on the court’s inherent power to issue a writ of error coram nobis is denied. The claim of error which defendant asserts is covered by CPL 440.10. Since it was enacted in 1970, CPL 440.10 has replaced "all aspects of the common law writs that it directly covers and thus resort to coram nobis is unavailable in situations covered by the statute” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 440.10, at 425).
Defendant’s motion is denied in all respects.

. Defendants Judy Perez, Jose Caban and Alexandra Martinez were found guilty of narcotics felonies after a jury trial. Sandra Martinez, Julio Ortiz and Orlando Rios were found not guilty of narcotics felonies after a separate nonjury trial. Manny Vargas (who was not present in the apartment when the police raided it) was found not guilty after a separate jury trial.

. While the trial court in Ryan (supra) refused to charge down to the lesser-included misdemeanor, in defendant’s case the trial jury was given the opportunity to return a misdemeanor charge if they found a lack of proof on any element of the top count.

. The Division of Criminal Justice Services reports more than 800 defendants were convicted after trial of class A narcotics felonies between 1984 and 1993.