[617 NYS2d 733]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EARL DOUGLAS, Appellant.

First Department, October 27, 1994

## APPEARANCES OF COUNSEL

*Jonathan S. Rosenberg* of counsel, New York City *(Philip L. Weinstein,* attorney), for appellant.

*Ellen Sue Handman* of counsel, New York City *(Donald J. Siewert* with her on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

Ross, J.

By an indictment filed March 5, 1992, defendant was charged with criminal possession of a controlled substance in the third degree in violation of Penal Law § 220.16 (possession of a narcotic drug with intent to sell same) and criminal possession of a controlled substance in the fifth degree in violation of Penal Law § 220.06 (5) (knowing and unlawful possession of 500 milligrams or more of cocaine). The defendant moved to suppress the physical evidence recovered upon his arrest and after a *Mapp* suppression hearing the trial court denied the defendant's motion. A *Sandoval* hearing was also held at which defendant sought to suppress his nine prior drug convictions. With respect to these convictions, the trial court precluded the prosecution from cross-examining the defendant with respect to (1) the underlying facts relating to a May 8, 1986 conviction of a misdemeanor possession; (2) an October 10, 1986 conviction of a misdemeanor sale; (3) an

October 22, 1986 conviction of criminal possession of a controlled substance in the seventh degree; (4) the underlying facts relating to a January 9, 1987 charge of criminal sale of a controlled substance in the third degree which resulted in a conviction of attempted criminal sale in the third degree, a class C felony; (5) a February 16, 1987 charge which resulted in a conviction of misdemeanor sale; (6) a March 24, 1987 charge which resulted in a conviction of misdemeanor sale; (7) a May 27, 1987 charge resulting in a conviction of misdemeanor sale; (8) a June 18, 1987 charge resulting in a conviction of misdemeanor sale; and (9) the underlying facts relating to a November 11, 1987 charge which resulted in a conviction of criminal sale of a controlled substance in the fifth degree.

The defendant proceeded to trial in May 1992, well before the December 16, 1993 release of *People v Ryan* (82 NY2d 497), and did not testify. The uncontradicted evidence adduced at the trial established that the arresting officer saw the defendant twice reach into a brown paper bag and drop vials into an unidentified woman's outstretched hand. The officer, who observed the defendant from a distance of 15 feet and then from a distance of about six feet, also testified that it appeared to him as if the defendant were counting out the number of vials he was depositing into the woman's hand. As the officer approached the defendant, the woman fled. The defendant was arrested. The brown paper bag, which contained 31 vials, was recovered from the defendant. Upon analysis of the contents of the vials by police chemists it was concluded that the vials contained 1,591 milligrams of cocaine. The jury acquitted defendant of the possession with intent to sell count but convicted him of the fifth degree possession count, which charged that defendant had "knowingly and unlawfully possessed five hundred milligrams or more of cocaine".

In this case, as it was with the vast majority of pre-*Ryan* narcotics possession cases, the prosecution, the defense and the trial court operated under the then common assumption that there was no scienter requirement with respect to the weight element of a drug possession charge *(see, People v Ivey,* 204 AD2d 16, 17, citing 3 CJI[NY] PL 220.16 [8]-[13], at 1682). Accordingly, the defendant's general motion to dismiss at the end of the presentation of all of the evidence cannot in any way be viewed to have been based on *Ryan* grounds. The record also clearly demonstrates that defense counsel's request that the court charge the lesser included offense of criminal

possession of a controlled substance in the seventh degree was based solely on the ground that the chemists' method of analysis could be viewed by a rational factfinder as not establishing that the pure weight of the substance recovered from the defendant was 500 milligrams or more. However, on this appeal, the defendant argues, *inter alia,* that there was insufficient evidence to prove his guilt of criminal possession of a controlled substance in the fifth degree under count two of the indictment as there was no evidence presented to prove that defendant knew he possessed at least 500 milligrams of cocaine.

■ Recently, this Court simultaneously released the decisions in five cases in which the defendants-appellants raised the same sufficiency argument, pursuant to *People v Ryan (supra),* as is raised here. We acknowledged our inability to reconcile our views with respect to the applicability of *People v Ryan (supra),* and in each case, *sua sponte,* granted leave to appeal to the Court of Appeals. The main point of disagreement in these cases centers on the issue of whether a *Ryan* claim of insufficiency is preserved for our review without a specific objection. The issue of retroactivity is also treated in some of the writings. However, that issue, which I view as dispositive here, was not extensively discussed and the retroactivity of *Ryan* was all but assumed. I do not share the view that the *Ryan* holding should be applied retroactively for the reasons stated, *infra.* However, I will first review the preservation dilemma and for the sake of clarity will give my view of the issue. It should be noted, however, that these two aspects of the *Ryan* decision cannot really be considered in a mutually exclusive manner as determination of one necessarily affects the determination of the other.

There are two distinct analyses with respect to the issue of the preservation of a *Ryan* claim presented by the cases released on September 27, 1994. One view is represented by the majority memorandum in *People v Cooper* (204 AD2d 24). In that case, the Bench viewed the failure to prove the *Ryan* "knowledge of weight" element as a true sufficiency question in all cases which, pursuant to the holding in *People v Kilpatrick* (143 AD2d 1), does not require a specific exception to be preserved for appellate review. A different view of the preservation dilemma is presented in *People v Ivey (supra).* In *Ivey,* Justice Sullivan, in a cogent opinion, noted that, since the prevalent assumption was that no proof of scienter was required with respect to weight in possession cases, the trial

court in that case, as in most pre-*Ryan* cases, did not charge the jury that knowledge of the weight was a distinct element of the possessory offense which the People were required to prove. He reasoned that the issue presented by *Ryan* in that context was fundamentally a jury charge problem rather than a true sufficiency problem. Thus, it was concluded that, where the defendant never objected to the jury charge on the weight element or to the trial court's response to a jury note in which the elements of the crime were repeated, the error in the charge of improperly defining the elements was unpreserved as a question of law. The Second Department reached the same conclusion in *People v Okehoffurum* (201 AD2d 508, 509, *lv denied* 83 NY2d 913, *lv denied upon reconsideration* 83 NY2d 970), albeit without extensive discussion.

The *Ivey* opinion relied upon the Court of Appeals holding in *People v Dekle* (56 NY2d 835, 837), that there is no "due process violation when there is evidence from which a rational trier of fact could find the essential elements of the crime *as those elements were charged to the jury without exception* beyond a reasonable doubt. There is neither constitutional nor jurisprudential error in permitting guilt to be determined under a penal statute as construed by the common assumption of both attorneys and the court" (emphasis in original; *see also, People v Maldonado,* 192 AD2d 381, *lv denied* 81 NY2d 1076, *lv denied upon reconsideration* 81 NY2d 1076). Moreover, in *People v Kilpatrick (supra,* at 2) it was stated that "[i]n determining whether an issue has been preserved as a question of law for review by the Appellate Division, it is important to distinguish a challenge addressed to the sufficiency of the evidence from one involving a claim of error in the trial court's charge or instructions to the jury." In *Kilpatrick,* it was specifically noted that the trial court properly instructed the jury on the elements of the crime charged in that case, and that the defendant did not take exception to it.

While the "common assumption" regarding the scienter requirement before *Ryan* resulted in the failure of the prosecution, the defense, and the trial court to address the issue, there were cases, other than *Ryan* itself, in which the issue was raised and the trial court did charge the jury with respect to the knowledge of weight requirement.

In *People v Gray* (205 AD2d 353), a matter in which this writer was in the majority, the conviction for criminal possession of a controlled substance in the fourth degree was reduced to seventh degree possession based upon defendant's

*Ryan* sufficiency claim. While it is not explicitly stated in the memorandum, the defendant on appeal raised both a *Ryan* sufficiency claim and a claim that he was deprived of a fair trial because the trial court failed to charge the jury that the People were required to prove his knowledge of the weight of the cocaine he possessed. We held that the charge issue had not been preserved. No specific exception to the charge was taken at trial. In addition, we declined to review the charge issue in the interest of justice. Again, while it is not explicitly stated in the memorandum, my concurrence with the modification and the refusal to review the charge issue in the interest of justice was based on the fact that the jury charge was proper even when evaluated under *Ryan*. Since the jury was charged to consider the scienter requirement as applied to weight, defendant's claim was a true sufficiency claim in any event, which, under *People v Kilpatrick (supra)*, is preserved without specific objection.

Similarly, in *People v Gordon* (204 AD2d 22), the majority reduced the conviction from fifth degree possession to seventh degree possession. The defendant's sufficiency claim under *Ryan* was found to have been preserved pursuant to *People v Kilpatrick (supra)*, even though no specific exception was taken at trial with respect to the deficiency in the proof concerning defendant's knowledge of the weight of the cocaine. Justice Sullivan concurred in the modification in that case citing the fact that the trial court, on two occasions when delivering supplemental instructions, "properly applied the scienter requirement to the weight in accordance with the dictates of the statute" *(People v Gordon, supra,* at 23 [Sullivan, J., concurring]). Thus, he stated that "[u]nder a charge correctly applying the scienter requirement to the weight of the drugs, the evidence was clearly insufficient to satisfy this element of the crime and a modification is in order" *(supra,* at 23).

The opposing view would argue that resolving the preservation dilemma in this manner ignores the fact that, since *Ryan*, at least, the "knowledge of weight" element is an essential element of these narcotics possession cases, the absence of which, even from pre-*Ryan* trials, must be adjudged fatal to the conviction. In *People v Cooper (supra)*, the majority stated that the "knowledge of weight" requirement was an "essential element of the crime charged" and concluded that the failure to prove that element amounts to a constitutional

denial of due process in all such cases. In *Cooper (supra)*, it was stated that: "The issue here comes down to whether a defendant can stand convicted in this State of a felony-grade crime where there is legally insufficient or no proof of *an essential statutory element* of the crime charged. To answer that question affirmatively is, in our view, a constitutional denial of due process" (emphasis in the original).

I do not disagree with the above statement as a general proposition of law, to the extent that it defines the difference between a true sufficiency problem (i.e., a failure of proof) and a defect in the manner in which the legal test under which the evidence is to be evaluated is presented to the jury (i.e., a charge error). However, I do disagree with the majority in *People v Cooper (supra)*, to the extent that they hold that a denial of due process occurs, even where all parties to the trial operate under the "common assumption" that the legal test under which a defendant's guilt is to be adjudicated does not require such proof as is now required by *Ryan*.

If *Ryan* is to be applied retroactively, then in cases such as the one at bar[1] and *People v Ivey (supra)*, where the charge given to the jury is defective, a specific objection is required *(see, People v Dekle, supra; People v Logan,* 74 NY2d 859). In cases such as *People v Gordon (supra)* and *People v Gray (supra)*, where the charge connects the knowledge requirement to the weight element, the failure to present evidence of defendant's "knowledge of the weight" truly is one of proof and under our holding in *People v Kilpatrick (supra)*, no specific objection is required.

It should be noted, however, that in those pre-*Ryan* cases where the "knowledge of weight" element was charged *(e.g., People v Gray, supra; People v Gordon, supra)*, retroactivity of *Ryan* is not an issue, since in such cases even though the parties may not have realized it, proof of the "knowledge of weight" element was placed in the case by the trial court. If however, a defendant's knowledge of the weight is viewed as an "essential element" of these possessory crimes as reasoned in *People v Cooper (supra,* at 24), then I do not believe that *Ryan* can be retroactively applied because it must then be

---

1. Review of the court's charge to the jury in this case shows that the court did not connect the scienter requirement to the weight element. In fact, the charge effectively separates the two elements, charging under a separately enumerated element that the People were required to prove "that the cocaine which the defendant possessed weighed 500 or more milligrams."

viewed as a "new rule". As such, *Ryan* would be at least as significant a departure from prior practice, and will have as profound an effect on the administration of justice as was involved in *People v Antommarchi* (80 NY2d 247, *rearg denied* 81 NY2d 759), and the Court's analysis of the retroactivity issue in *People v Mitchell* (80 NY2d 519) would necessarily apply here with equal force.

In *People v Mitchell (supra),* the Court determined that its holding in *People v Antommarchi (supra)* should be applied prospectively only. In *Mitchell,* the Court's analysis contrasted this State's three-prong analysis of a new rule's retroactivity enunciated in *People v Pepper* (53 NY2d 213, *cert denied* 454 US 967) with that of the United States Supreme Court's pronouncement in *Griffith v Kentucky* (479 US 314), that a new constitutional rule is to be applied retroactively to all cases pending on direct review. That the Court in *Mitchell* viewed the rule stated in *Antommarchi* as a new rule of law subject to the *Pepper* analysis is plain from its statement that the *Antommarchi* holding "represented a dramatic shift away from customary and established procedure" *(People v Mitchell, supra,* at 525). The Court also noted that it was reasonable to believe that the change in the jury selection process will be substantial and affect most, if not all, appeals presently pending from jury trials. The *Ryan* holding represents just as dramatic a shift from prior procedures and while not all criminal cases are narcotics cases, thousands of matters would be affected throughout the State.

Essentially, in *People v Ryan (supra),* the Court interpreted Penal Law § 220.18 (5) to find, contrary to the common assumption of the Bench and Bar prior thereto, that "there is a *mens rea* element associated with the weight of the drug" (82 NY2d, *supra,* at 502). The Court, as a practical matter, further defined the legal sufficiency requirement which must be met in order to obtain a conviction for possessory offenses in which the degree is a function of the weight possessed. That is, it further defined the essential elements of the crime, and necessarily increased the quantum of proof required for such drug convictions.

The Court in *Ryan* also recognized that the nature of the proof required to convict defendants of possessory crimes would be changed by the application of the scienter requirement to weight element. Moreover, Chief Judge Kaye aptly anticipated some of the difficulties in providing the required

proof in the so-called specific weight cases, such as the one at bar.

It is noted in *Ryan (supra,* at 505) that the defendant's knowledge of the weight can be inferred from such evidence as "negotiations concerning weight, potency or price" and that "for controlled substances measured on an 'aggregate weight' basis [citation omitted], knowledge of the weight may be inferred from defendant's handling of the material, because the weight of the entire mixture, including cutting agents, is counted [citations omitted]". The Court noted, however, that the same inferences may be unavailable for controlled substances measured by pure weight (e.g., psilocybin as was involved in *Ryan* and cocaine as is involved here), which are often combined with other substances to facilitate handling. Those who insist that *Ryan* requires that the People are now obligated to prove that defendant knew the exact amount of the controlled substance possessed down to the milligram have apparently overlooked the following statement from *People v Ryan (supra,* at 505-506), regarding pure weight cases:

"In these circumstances it may indeed be difficult to show defendant's knowledge of the weight. Although we cannot simply read the knowledge requirement out of the statute, these 'compelling practical considerations' may inform our interpretation of that element *(see, People v Mizell,* 72 NY2d, at 654).

"The Legislature has decided that persons who illegally possess larger quantities of controlled substances should be punished more severely; their conduct is more repugnant and presents a greater threat to society. Because drug possession is not a strict liability crime, however, an individual is not deserving of enhanced punishment unless he or she is aware that the amount possessed is greater. A purpose of the knowledge requirement, then, is to avoid overpenalizing someone who unwittingly possesses a larger amount of the controlled substance than anticipated.

"That legislative purpose can be satisfied, among other ways, with evidence that the pure weight of the controlled substance possessed by the defendant is typical for the particular form in which the drug appears. This correlation between the pure weight typically found, and the pure weight actually possessed, substantially reduces the possibility that a person will unjustly be convicted for a more serious crime."

The Chief Judge then employed the example of an individ-

ual who may knowingly possess 50 doses of LSD on blotter paper, but understandably would have no awareness that upon chemical analysis the pure LSD weighs 2.5 milligrams. The Chief Judge stated that "[i]f there is evidence that a typical dose of LSD weighs .05 milligrams [citation omitted], the jury could conclude, within the meaning of the statute, that defendant knowingly possessed more than 1 milligram, and convict of fourth degree possession" *(supra,* at 506).

It was stated in *Ryan (supra,* at 504) that prior cases "suggested that knowledge of the weight is an element." The guidance provided by the opinion, with respect to the nature of the proof required, indicates that the Court realized that the element as defined in *Ryan* was never specifically at issue in prior cases and that such proof as discussed in the opinion was never before required in narcotics cases for this purpose.

It is plain from a fair reading of *Mitchell (supra),* that like *Ryan (supra),* the *Antommarchi* holding resulted from a new construction of an existing statute.

The Court stated in *Mitchell (supra,* at 526): "It is manifest that *Antommarchi* was decided as a question of State law. The basis for the decision is found in New York's Criminal Procedure Law, which provides that a defendant 'must be personally present during the trial of an indictment' (CPL 260.20). Under our decisions, this statutory right has been extended to the impaneling of the jury [citations omitted]. Although the statute has underlying due process concerns, its protective scope is broader than the constitutional rights it encompasses [citations omitted]." The Court noted also that the analysis in *Antommarchi* "involved none of the balancing process employed in constitutional determinations, but rather was based on a violation of CPL 260.20" *(supra,* at 527). The same analysis applies here.

In *People v Pepper (supra,* at 220), it was held that the retroactive effect of a new rule is to be determined by evaluating three factors: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application. The stated purpose of the *Ryan* holding was to clarify the construction of the word "knowingly" in Penal Law § 220.18 (5) as it applied to the weight of the controlled substance *(see, People v Ryan, supra,* at 499). A purpose of the knowledge requirement as stated by the Court is to "avoid overpenalizing someone who unwittingly possesses a larger amount of a controlled

substance than anticipated" *(supra,* at 505). While this may seem to merely be a minor clarification, it is, in fact, a major change of the basis by which penalties for drug possession are meted out in this State. The majority in *Ryan (supra,* at 503-504) took cognizance of same.

It has been stated that "a compelling argument can be made that under the first prong of the *Pepper* analysis, full retroactive application is appropriate for those defendants who raised the specific objection and preserved the issue" *(People v Perez,* 162 Misc 2d 750, 762). However, in considering the second and third prongs of the *Pepper* test, it is clear that the old rule was relied upon exclusively in the vast majority of drug possession cases throughout the State. Necessarily, the effect on the administration of justice of retroactive applica-*tion of Ryan* would approach that of *Antommarchi.* Therefore, I firmly believe that any retroactive application must be precluded.

*People v Perez (supra)* was a case in which the defendant moved to vacate her conviction pursuant to CPL 440.10 (1) (h) and the Supreme Court's inherent power to grant a writ of error coram nobis. The collateral challenge was based upon the People's failure to present evidence at trial of the weight of the heroin she allegedly possessed. In denying her application, the court found, without specifically reaching the retroactivity issue, that the effect of providing such collateral relief on the administration of justice would be "catastrophic" *(supra,* at 762). Therein, it was noted that:

"In the most recent five-year period for which figures are available (1989-1993), there have been 126,278 felony drug convictions in New York State according to the Division of Criminal Justice Services. Notwithstanding the fact that not all of these felony convictions contained a weight element and only a small proportion involve trial convictions, the sheer volume of felony narcotics convictions over this recent time period provides some indication of the potential effect of granting collateral relief pursuant to *Ryan (supra)* to defendants who did not preserve the issue.

"Weight has been an element of New York State drug laws since 1951. *(See,* former Penal Law § 1751.) In article 220 of the Penal Law at present there are 54 felonies which have the weight of the controlled substance as an element of the crime. Every class *[sic]* A narcotics felony in the Penal Law contains a weight element.

"Since there is no time limit on claims pursuant to CPL 440.10, and a defendant 'may move at nisi prius to vacate the judgment at any time' *(People v Corso,* 40 NY2d 578, 580 [1976]), thousands of convicted felons, from teenagers to senior citizens, whether or not incarcerated, may move with *Ryan* retroactivity claims to remove the stigmatization of the felony conviction. If a fraction of those convicted of narcotics felonies with weight elements seek *Ryan*-based relief, the reversal, or even reconsideration, of these cases on *Ryan* grounds 'would create a substantial burden on the administration of justice and delay the disposition of countless pending cases' *(People v Mitchell, supra,* at 529)." *(Supra,* at 763.)

Added to those seeking collateral relief must be those pending appeals such as this one in which the matter was tried prior to the release of *Ryan.* Therefore, *Ryan,* just as *Antommarchi,* should be applied prospectively to those possession cases in which the date of conviction is after the release date of *People v Ryan (supra).*

It is appropriate at this juncture to note that other considerations militate against the retroactive application of *Ryan.* One concerns the profound effect the *Ryan* decision is having on various evidentiary rulings in narcotics cases brought since its release. For example, the prior arrests and convictions of defendants, matters once routinely suppressed in *Sandoval* hearings, may now in certain cases be deemed admissible for the purpose of showing a defendant's prior experience with narcotics in order to prove his "knowledge of the weight" of the narcotics he or she is charged with possessing *(see, People v Ivey, supra,* at 19, citing *People v Molineux,* 168 NY 264, 297; *People v Jackson,* 39 NY2d 64, 68; *and see, People v Paulino,* NYLJ, Feb. 16, 1994, at 22, cols 2, 4; *and see, Judge Admits Old Conviction In Drug Case,* NYLJ, Sept. 27, 1994, at 1, col 3, noting that Justice Gerald Sheindlin, in *People v Morales* [162 Misc 2d 415], authored what is apparently the first written decision authorizing the prosecution to introduce evidence of defendant's previous guilty plea to criminal sale of a controlled substance in the third degree to prove the scienter requirement). Had the scienter requirement been an issue in the case at bar the trial court's *Sandoval* ruling on defendant's nine prior drug convictions might have been different. Since the issue of prior experience with narcotics may be relevant in every narcotics case with a weight element, the prior arrest, convictions and bad acts may be admitted whether or not these defendants

chose to testify. It should also be noted that the People in this case may have been able to introduce evidence as to what the cocaine in a typical vial weighed, thereby allowing the jury to infer the defendant's knowledge of the weight simply from the number of vials possessed *(People v Ryan, supra,* at 506).

In any event, to read *People v Ryan* as requiring that there be proof that defendant knew he possessed 1,591 milligrams, or as the dissent prefers, .055685 ounce, or .038185 ounce over the misdemeanor level, would seem to me to be a misinterpretation of the *Ryan* opinion. The analysis, in which the dissent compares the milligram weight to its equivalent in ounces appears as an attempt to minimize the potency of these controlled substances as well as weight issue in these narcotics cases. Such an approach is unrealistic in view of the manner in which the statute is written and the manner in which both legal and illegal drugs are dispensed. The Legislature drafted the weight gradations in the statutes for possession of certain substances (hallucinogenics and lesser degree possession of cocaine) in milligrams. Moreover, this Court can take judicial notice of the fact that legal drugs, as well as illegal controlled substances sold at the street level, are usually dispensed in milligrams. Thus, where the dissent makes much of the fact that the entire amount possessed by the defendant was the equivalent of .055685 ounce, I would find it appropriate to note that a regular aspirin tablet, a potent legal drug, weighs 325 milligrams, which transposes to "only" .012466 ounce. Clearly, the *Ryan* opinion should not be read in such a manner as would ignore the nature of the substance possessed.

Therefore, for the reasons stated above, we decline to hold that *People v Ryan (supra)* is to be applied retroactively. Consequently, it is clear in this case that, when measured by the legal test as stated in the court's charge, the evidence is clearly sufficient to support the conviction.[2]

---

**2.** The defense counsel's request that the court charge on the lesser included offense of criminal possession of a controlled substance in the seventh degree was based solely on the argument that the jury might be able to find reasonable doubt concerning the accuracy of police chemical testing procedures, and could, therefore, find that the amount itself was not proved. The court correctly denied this request noting that the expert testimony was essentially unchallenged and, therefore, there was no reasonable view of the evidence that would permit a finding that the defendant committed the lesser, but not the greater, offense *(People v Glover,* 57 NY2d 61). Thus, the request to charge cannot in this pre-*Ryan* case in any way be construed as raising the *Ryan* "knowledge of weight" issue.

■ With regard to defendant's claim relative to the denial of his motion to suppress physical evidence, we conclude that while the hearing court failed to place its findings of fact and conclusions of law on the record as required by CPL 710.60 (6), since the defendant had a full and fair hearing, this Court may make the required findings of fact and conclusions of law *(People v Denti,* 44 AD2d 44, 47; *see, People v Jones [Muller],* 204 AD2d 162, *lv denied* 83 NY2d 968, 969). Upon such review, we credit the testimony of the arresting officer and conclude that the officer had probable cause to arrest the defendant upon observing defendant make a street transfer of what the officer believed, through his experience and training, to be vials containing crack cocaine *(People v McRay,* 51 NY2d 594, 602). The record does not support the conclusion that the officer's testimony was patently tailored to overcome constitutional objection.

Accordingly, based upon the foregoing, the judgment of Supreme Court, New York County (Alvin Schlesinger, J.), rendered August 27, 1992, by which defendant was convicted, after a jury trial, of criminal possession of a controlled substance in the fifth degree, and sentenced, as a second felony offender, to a term of 2½ to 5 years in prison, is affirmed.

ROSENBERGER, J. P. (dissenting in part). I dissent and would modify the conviction by reducing it from criminal possession of a controlled substance in the fifth degree to criminal possession of a controlled substance in the seventh degree, substitute a definite sentence of one year, and otherwise affirm. The defendant's sufficiency claim is preserved by his motion at the end of the People's case *(People v Kilpatrick,* 143 AD2d 1; CPL 470.15 [4] [b]). The evidence was insufficient, as a matter of law, to support the finding that the defendant knew that he possessed more than 500 milligrams of cocaine (Penal Law § 220.06 [5]).

In *People v Ryan* (82 NY2d 497, 505) the Court of Appeals stated: "drug possession is not a strict liability crime[;] * * * an individual is not deserving of enhanced punishment unless he or she is aware that the amount possessed is greater". Here there was no direct or circumstantial proof that the defendant knew he possessed more than 500 milligrams of cocaine *(compare, People v Acosta,* 80 NY2d 665, 668).

The jury rejected the People's claim that the defendant was a seller of drugs when they acquitted him of criminal possession of a controlled substance with intent to sell. Thus, no

inference can be drawn that this defendant had any special knowledge as a merchant in the drug trade, and it is unreasonable to infer that he must have known that he possessed over 500 milligrams of pure cocaine merely by holding a number of vials of an impure powder in his hand.

The majority holds that the requisite knowledge can simply be inferred from the fact that the defendant was holding 1,591 milligrams of cocaine in his hand. I disagree. The pure weight the defendant was charged with possessing, transposed to ounces, is .055685 ounce. The amount which exceeds the misdemeanor level is .038185 ounce. To conclude that the defendant, or anyone, could gauge a difference in weight of less than four hundredths of an ounce, defies all human experience. The majority misconstrues my discussion of comparative weights. It has nothing whatever to do with the potency of controlled substances. It has to do only with the human ability to gauge infinitesimal weights simply by touch, unaided by instruments of any kind.

The majority begins its opinion by reviewing the defendant's criminal history. This is perhaps to suggest, as the opinion later does, that these arrests might be admissible to show his experience in gauging precise weights. What is omitted from the listing is the fact that six of the nine arrests dealt with marihuana alone. Marihuana possession is the subject of an aggregate weight standard (Penal Law § 221.10 *et seq.)* and not the pure weight standard which is in issue here (Penal Law § 220.06 [5]). The Court of Appeals in *People v Ryan (supra)* has made clear the difference in proofs permissible in pure weight and aggregate weight cases. Further, there is no indication in the record before us that the defendant ever previously possessed cocaine, the subject of the instant case, at any time, including his last arrest some four and one-half years prior to the arrest which gives rise to this appeal.

RUBIN and WILLIAMS, JJ., concur with ROSS, J.; ROSENBERGER, J. P., and ELLERIN, J., dissent in a separate opinion by ROSENBERGER, J. P.

Judgment, Supreme Court, New York County, rendered August 27, 1992, affirmed.