[645 NYS2d 494]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CHRISTOPHER NEELY, Appellant.

Second Department, June 17, 1996

## APPEARANCES OF COUNSEL

*Ursula Bentele,* Brooklyn, for appellant.

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn *(Roseann B. MacKechnie, Ann Bordley,* and *Lawrence P. Oh* of counsel), for respondent.

## OPINION OF THE COURT

ROSENBLATT, J. P.

The immediate question before us is whether the Supreme Court, following a *Wade-Dunaway* hearing *(United States v Wade,* 388 US 218; *Dunaway v New York,* 442 US 200), properly denied that branch of the defendant's omnibus motion which was to suppress identification testimony. An underlying issue is how this Court is to best exercise its procedural prerogatives considering that the Supreme Court conducted the hearing before *People v Dixon* (85 NY2d 218) was decided.

In *Dixon,* the Court of Appeals held that canvassing a crime area in a police car is a " 'police-arranged' " identification procedure *(People v Dixon, supra,* at 222). The defendant points out, correctly, that the Supreme Court had found that no police-arranged identification procedure had occurred and that this cannot abide the *Dixon* case, which was decided some 20 months after the hearing. The defendant goes on to contend that his case must be remitted to the Supreme Court for a new hearing, for the purpose of making factual findings on the issue of undue suggestiveness of the identification procedure.

The prosecution acknowledges that in the afterlight of *Dixon,* the hearing court's conclusion that the identification procedure was not police-arranged is not tenable. The prosecution maintains, however, that suppression was nonetheless properly denied because the showup in question, although "police-arranged" under *Dixon,* was not unduly suggestive, and that this Court may reach that conclusion on the record before us.

Both sides have addressed whether this case should be remitted, and we take this opportunity to synthesize the relevant decisions and to set forth the criteria that determine the appropriate procedural path.

When a hearing court fails to make findings of fact and conclusions of law to support its order, or when they are incomplete, the Legislature has given this Court a choice in how to address the problem. We may remit the case to the hearing court with directions that it make the necessary factual findings and legal conclusions *(see,* CPL 710.60 [4], [6]) or we may make them ourselves *(see,* CPL 470.15 [1]). The question of whether we remit or determine the matter ourselves involves a balancing of a number of factors, including the adequacy of the record, the scope of the hearing itself, the interest of judicial economy, and, of course, elemental considerations of fairness.

The most obvious case for remittal is when the motion court summarily and improperly denies a suppression motion without a hearing *(e.g., People v Youngblood,* 210 AD2d 948 [motion to suppress physical evidence]; *People v Williams,* 182 AD2d 490 [motion to suppress identification testimony]; *People v Ramos,* 130 AD2d 439 [motion to suppress physical evidence]; *People v Martin,* 135 AD2d 355 [motion to suppress physical evidence]; *People v Estrada,* 147 AD2d 407 [motion to suppress confession]). Under those circumstances there are no facts to review, and the only question for us is whether the suppression motion was accompanied by sufficient allegations so as to justify a hearing *(see, People v Mendoza,* 82 NY2d 415; *People v Rodriguez,* 79 NY2d 445).

Another basis for remittal is when the Appellate Division cannot possibly make its own factual determinations based on the proceedings at the hearing level, because a record was not developed adequately for appellate review. This arises most frequently outside of the suppression context, in evaluating such claims, for example, as whether the defendant was present during a *Sandoval* hearing *(see, People v Hailey,* 212 AD2d 807 *after remand* — AD2d —, 1995 NY Slip Op 09884 [2d Dept, Nov. 13, 1995]) or at a sidebar when a prospective juror was questioned privately *(see, People v Davis,* 216 AD2d 314, *after remand* — AD2d —, 1995 NY Slip Op 10401 [2d Dept, Nov. 20, 1995]).

There have also been instances, in a suppression context, in which the Appellate Division could not make appropriate factual findings because the proof was inadequate *(see, People v*

*Burrows*, 53 AD2d 1038) or the record insufficiently developed *(e.g., People v Lombardi*, 18 AD2d 177, *affd* 13 NY2d 1014; *People v Rossy*, 56 AD2d 828).

A review of the cases reveals that when the Appellate Division remits a suppression issue to a court that has held the hearing but has failed to supply findings of fact and conclusions of law, it is likely to involve a hearing at which there were open questions of credibility. *People v Gaddy* (132 AD2d 1001), *People v Parker* (205 AD2d 713) and *People v Dorant* (207 AD2d 797) proclaim as much, and in *People v Rumph* (190 AD2d 698) we expressed a similar concern when we remitted the case to the hearing court because we could not tell whether the court based its determination on credibility grounds or on a legal premise which we considered faulty.

On the other hand, when we have exercised our fact-finding province it has usually been in the context of an ample record, made at a hearing in which the issues were presented fully enough to allow review. This has been true of *Mapp* hearings *(see, People v Douglas*, 205 AD2d 280, *affd* 85 NY2d 961; *People v Le Grand*, 96 AD2d 891; *People v Denti*, 44 AD2d 44; *People v James*, 93 AD2d 893; *People v Pacifico*, 95 AD2d 215), *Wade* hearings *(see, People v Jones*, 204 AD2d 162; *People v Lewis*, 172 AD2d 1020), and *Huntley* hearings *(see, People v Cruz*, 65 AD2d 558; *People v Acosta*, 74 AD2d 640; *People v Russo*, 45 AD2d 1040; *People v Brown*, 33 AD2d 735). Because the Appellate Division has authority to make its own findings of fact in such nonjury matters *(People v Lopez*, 95 AD2d 241, 253; *People v Smith*, 93 AD2d 432, 435; *People v Casado*, 83 AD2d 385, 387), we have made factual determinations that have reversed or modified the findings of hearing courts *(see, People v Crowley*, 98 AD2d 628; *People v Mullins*, 103 AD2d 994; *People v Massiah*, 47 AD2d 931; *People v Lopez, supra)*.

We do not read *Dixon* as requiring a new hearing in this case. In *Dixon* the Supreme Court summarily denied a *Wade* hearing and concluded, in the absence of any testimony, that a "pointout" during a police canvass of the area was not "police-arranged" *(People v Dixon*, 85 NY2d, *supra*, at 223-224). In the case before us, however, a hearing was held, and the record provides a fully adequate basis upon which we may review the testimony at the hearing and make our determinations compatibly with the principle that the Court of Appeals pronounced in *People v Dixon*. The proof before the hearing court established the following:

On the night of April 29, 1992, shots rang out near the Parade Grounds in Brooklyn. Police Officer James DiBenidetto,

who was on patrol nearby, heard the shots and responded to the location. He saw a crowd of people running away from the Parade Grounds, and two individuals running into the Parade Grounds. He approached the crowd and a livery cab driver, Rafael DuBois, informed him that two people had run past his cab into the Parade Grounds, and that one of them had a silver gun.

Officer DiBenidetto placed DuBois in the patrol car and drove into the Parade Grounds, up to the two men the officer had seen running into the Parade Grounds. The two men (the defendant and another male), of whom Officer DiBenidetto had never lost sight, were then walking out of the Parade Grounds. The officer stopped the men and noticed that five to ten feet away from the defendant were two guns, one of which was silver, lying on the ground. DuBois exited the patrol car and, pointing to the defendant, identified him as the individual who had run by his cab with the gun. DuBois also identified the silver gun as the one the defendant was carrying.

On the basis of the record before us, we conclude that the identification took place within a short span of time, and under exigent circumstances. It was in the context of the need for immediate police action following gunfire. It was not so unnecessarily suggestive as to create a substantial likelihood of misidentification (see, People v Duuvon, 77 NY2d 541, 545). The hearing court found the testimony of the police officer credible, and we have no basis to disagree with that conclusion, or with its conclusion that the police had probable cause to arrest the defendant.

With regard to the defendant's claim relating to his absence from the trial, the record supports the conclusion that the defendant's absence was voluntary, and that he absconded after having received and signed the appropriate warnings (see, People v Parker, 57 NY2d 136).

Lastly, we find that the Supreme Court was within its discretion in imposing the sentence that it did, considering the defendant's extensive criminal record, which included armed, violent crimes (see, People v Suitte, 90 AD2d 80).

Accordingly, the judgment and amended judgment are affirmed.

RITTER, HART and KRAUSMAN, JJ., concur.

Ordered that the judgment and amended judgment are affirmed.